DAVIS, et ux. *v.*
BARR, CHAIRMAN, STATE TAX COMMISSION, et al.

No. 42791          November 18, 1963          157 So. 2d 505

*deQuincy V. Sutton, Lyle V. Corey,* Meridian, for appellants.

*John E. Stone,* Jackson, for appellees.

Rodgers, J.

This is an action brought by appellants for the alleged purpose of suppressing an assessment for state income taxes for the taxable years of 1945 through 1954.

Appellants filed an original bill in the Chancery Court of Lauderdale County, Mississippi, on October 16, 1961, alleging that Noel Monaghan, then Tax Commissioner, was Chairman of the Mississippi State Tax Commission, and that H. N. Eason was Chief of Division of Income Tax, and that they had an established office in Lauderdale County, Mississippi. It was further alleged that the complainants filed income tax returns for the taxable years 1945-1954, and paid taxes shown therein to be due. It is alleged that these returns were destroyed by the Tax Commissioner without notice to complainant,

and thereafter at a time, more than three years, after the tax returns were filed, the Commissioner, Noel Monaghan, and H. N. Eason, demanded of the complainants the sum of $13,693.16, with interest. This amount was alleged to be more than the amount due as shown by the tax returns filed. It is alleged the assessment was not made on the basis of an examination of the tax returns, and was therefore not made in a manner contemplated by law.

It is said in the bill that the complainants are unable to show that the returns were correct because they have been destroyed, but that the returns were correct. It is alleged that the demand and assessment of the Commission is a lien on complainants' home in Lauderdale County, and unless the demand is paid before the 20th day of October 1961, their property will be seized for the satisfaction of the assessment. Complainants insist that the foregoing facts prevent them from obtaining "due process of law", and that such facts violate their constitutional rights under the Constitution of the United States and the Constitution of the State of Mississippi. Appellants claim that § 9220-27 (9), Code 1942, Rec., does not apply to this action, and that the named individuals are liable for attorney's fees required to be paid by complainants in defending the excessive and unauthorized acts, an invasion of complainants' constitutional rights by defendants.

The case was transferred to the Chancery Court of Hinds County (First District) on motion of defendants, where a general demurrer to the original bill was overruled. The defendants filed their answer admitting the assessment but denying that it was unlawfully made in violation of complainants' constitutional rights, nor without due process of law. The defendants incorporated in their answer, by way of a plea, a denial of the jurisdiction of the chancery court in tax matters under the circumstances set out in the bill of complaint, for the

reason that the tax laws provided an administrative remedy in cases where an additional income tax assessment was made. It is alleged that the taxpayers, appellants here, refused to post the required bond and proceed in the manner provided. Defendants further alleged that § 9220-27 (9), Code 1942, Rec., prohibits the chancery court from enjoining the collection of income taxes.

On motion of defendants, the cause was set for hearing on the special plea above set forth. The plea to the jurisdiction was first overruled. The complainants then presented a motion requesting the court to strike the answer of defendants to the original bill. When this argument was heard on the motion, the chancellor entered a final decree holding complainants refused to avail themselves of the statutory administrative procedure, and that complainants have no standing in the chancery court since it is without jurisdiction. The bill of complaint was dismissed, and from that decree this case is now on appeal to this Court. Dexter Barr was substituted as party-defendant instead of Noel Monaghan.

Appellants argue that there is "really one question in this case" and that "the question is whether or not appellees have authority to destroy returns of taxpayers and then force those same taxpayers to appear before them administratively to prove those returns were correct."

There are several statutes involved in the question presented here, and the Code sections, and parts of Code sections, applicable to this case, are annexed hereto as Notes.

We are confronted at the threshold of this appeal with the question raised by the plea, namely, whether or not the taxpayer-appellants, as a prerequisite to the invoking of judicial aid, should have exhausted their administrative remedies before the Tax Commission as provided by the foregoing Code section.

It has been said: "The last century has witnessed the rise of a new instrument of government, the administrative tribunal. In its mature form, it is difficult to find its parallel in our earlier political history; its development seems indigenous. The rapidity of its growth, the significance of its power, and the implications of its being, are such as to require notice of the extent to which this new 'administrative law' is weaving itself more and more into our governmental fabric." The Administrative Process by Landis, p. 1.

The hallowed ideal of separation of powers in government as a political maxim is ancient and its worth has been proven. Our tripartite form of government has, nevertheless, readily adopted and smoothly adjusted the old rules of law to this new tool. Its importance has been magnified until it is sometimes called "fourth estate." It is said that: "In recent years there has been a pronounced movement toward the enactment of general statutes containing codes of procedure to be followed by regulatory agencies. A model or uniform act has been drafted, and a dozen or so states have adopted administrative procedure acts. * * * In 1946 Congress enacted the Administrative Procedure Act, which provides a new, basic, and comprehensive regulation of procedures in most federal agencies." 2 Am. Jur. 2d, Administrative Law, § 201, p. 32. To say the least, administrative law has become a very effective tool in the administration of a modern, complicated government. Lawbook writers are taking notice of rapidly developing field of Administrative Law, as will be seen by the correlated subjects of public administration under 2 Am. Jur. 2d, p. 20.

One of the new rules growing out of administrative law is that known as exhaustion of administrative remedies. The above-mentioned textwriter points out in § 595, p. 426, as follows: "The doctrine of exhaustion of administrative remedies requires that where a remedy be-

fore an administrative agency is provided, relief must be sought by exhausting this remedy before the courts will act. This doctrine is well established, is a cardinal principle of practically universal application, and must be borne in mind by the courts in construing a statute providing for review of administrative action. Thus, frequent reference is made to the long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted. Basically the doctrine of exhaustion of administrative remedies is a product of judicial self-limitation, but in certain instances the doctrine, or principles involved therein, are directly related to express statutory provisions. * * * The doctrine of exhaustion of administrative remedies is sometimes said to rest upon the presumption that the administrative agency, if given a complete chance to pass upon the matter, will decide correctly  * * *'' It is also pointed out under § 596, p. 429: ''The doctrine of exhaustion of administrative remedies is merely one aspect of the broader doctrine which requires final administrative action as a prerequisite of judicial review.

''Since the doctrine of exhaustion of remedies is most frequently invoked in equity proceedings, it should be noted that the doctrine under which no equitable relief is available where there is an adequate remedy at law has been extended to embrace administrative remedies, moreover, this equitable doctrine, while resembling the doctrine of exhaustion of administrative remedies, is far broader than the exhaustion doctrine because it also applies where there is available a remedy at law outside of the administrative process. * * *''

There are many cases cited on tax and assessment authorities, Note 1, p. 426 of the foregoing text.

██ █ Mississippi has followed the great weight of authorities requiring persons to exhaust their adminis-

trative remedies before resorting to court. In the case of Scott v. Lowe, 223 Miss. 312, 78 So. 2d 452, cited under Note 2 of § 596, p. 429, of the above-mentioned text, this Court said: "This case raises for the first time the question of whether a civil service employee of a city can obtain a judicial review by injunction in chancery of an action of municipal officers allegedly affecting his job, or whether the statutory method of appeal provided for in such cases is his exclusive remedy." In answer to that question, this Court held: "* * * we think that appellee has a plain, speedy, adequate and complete remedy at law and accordingly he must pursue the statutory method of appeal."

In the case of Morehead v. Miss. Safety-Responsibility Bureau, 232 Miss. 412, 99 So. 2d 446, it is said: "The law is well-settled that where an administrative remedy is provided by statute, relief must be sought by exhausting this remedy before the courts will act. Many of the decisions lay stress upon the fact that any other rule would overcrowd the dockets of the courts. 42 Am. Jur., Public Administrative Law, Section 197, p. 580."

This rule has been universally followed. See the following cases: Deering Milliken, Inc. v. Johnston, 295 F. 2d 856; Harrington v. Glidden, 179 Mass. 486, 61 N. E. 54; Malone Freight Lines, Inc. v. U. S., 204 F. Supp. 745 (Ala. 1962); Natural Gas Pipeline Company v. Slattery, 302 U. S. 300; Dalton Adding Machine Company v. The State Corporation Commission of the Commonwealth of Virginia, 236 U. S. 699; First National Bank of Greeley v. Board of County Commissioners of the County of Weld, 264 U. S. 450; Postal Telegraph-Cable Company v. City of Fremont, 103 Neb. 476, 255 U. S. 124; Gorham Mfg. Company v. State Tax Commission of the State of New York, 266 U. S. 265.

The following textbooks hold to the rule that "The doctrine of exhaustion of administrative remedies requires that where an administrative remedy is provid-

ed by statute, relief must be sought by exhausting this remedy before the courts will act." 42 Am. Jur., Public Administrative Law, § 197, p. 580; Administrative Law Treatise by Davis, Vol. 3, § 20.09, p. 106; Administrative Law by Forkosch, § 298, p. 553; Harvard Law Review, Vol. 51, p. 1261.

This rule is also shown under the subject of Taxation, 51 Am. Jur., § 769, p. 698, wherein the textwriter said: "In the light of widely varying statutory provisions, the broad view has received expression, with respect to different particular factual situations and in widely divergent language, that failure on the part of one seeking an abatement of his tax assessment to invoke an available administrative remedy, or, if invoked, to pursue the possible administrative appeals to exhaustion, prevents entirely, or in some way limits, his obtaining any relief from the courts with respect to the amount or the legality of the challenged assessment."

The rule is expressed in 84 C. J. S., Taxation, § 513, pp. 980-982, in the following language: "Where the error or irregularity complained of is not such as to annul and render the tax itself utterly void, if administrative boards or officers are established by law for the review and correction of assessments, the remedy thus provided is exclusive and is the only one available in the first instance for the purpose of granting relief falling within the powers conferred on such administrative agencies, unless an alternative procedure, judicially or otherwise, is expressly made available as a method of reviewing and correcting assessments. The rule operates to bar either a direct application for review or correction of the assessment addressed to any other body, in the first instance, or a collateral attack, either at law or in equity, on the assessment in the event of a failure to bring the matter properly before the administrative agency established for the purpose of review and correction." Other cases that should be cited

are Williams, Treasurer of the State of Arizona v. Bankers National Ins. Co., 297 P. 2d 344, 80 Ariz. 294 (1956); People v. West Publishing Co., 216 P. 2d 441 (Cal. 1950); U. S. v. Superior Court, 120 P. 2d 26 (Cal. 1941).

Appellants had an administrative remedy to "file an appeal and show cause or reason why the tax or deficiency should not be paid" § 9220-25 (7), Code 1942, Rec. The taxpayer also had the right to appeal to the State Tax Commission and thereafter file a petition in the chancery court, accompanied by a bond in a sum double the amount in controversy. Sec. 9220-31, Code 1942.

Appellants did not pursue their remedy provided by law before the State Tax Commission, nor did they post the required bond with their petition in the chancery court. They alleged that their reason for failing to follow the statutory procedure is based upon two propositions:

(1) It is contended that the Tax Commission exceeded its authority because the law (§ 9220-25, Code 1942, Rec.) required that: "As soon as practical after the return is filed, the commissioner shall examine it; if it then appears that the correct amount of tax is greater or less than that shown in the return, the tax should be recomputed * * *" It is said, however, these tax returns were destroyed and therefore the Tax Commissioner's capacity to examine them was lost, and since they were presumed to be correct, the Tax Commission lost jurisdiction of assessment.

The fallacy of this argument becomes apparent by an examination of the foregoing Code Section, as Amended by Chap. 554, Laws of 1958, in cases where a change has been made by the Internal Revenue Service of the reported net income of the taxpayer. This section applies to the previous tax laws before the amendment, as is shown by (7) as follows: "If upon examination of a return made under this act or income tax laws

previously in effect, a tax or a delinquency in tax is discovered, the taxpayer shall be notified thereof and given a period of not more than sixty (60) days after such notice is sent by mail in which to file an appeal and show cause or reason why the tax or deficiency should not be paid.''

██ ██ A taxpayer has no vested right in the statutory method of collecting taxes and a change in the method of collecting taxes is not a violation of due process of law, and the Legislature may adopt new remedies for the collection of taxes and apply them to taxes already delinquent without any violation of the Federal Constitution. See Schreiber v. Cook County, 388 Ill. 297, 58 N. E. 2d 40, 55 A. L. R. 1162; Anno. 77 A.L.R. 1034; 51 Am. Jur., Taxation, § 990, p. 866.

██ ██ We do not believe that the mere fact that the original returns filed by appellants were destroyed by the Tax Commission under the authority of §§ 9216, 9217, Code 1942, Rec., relieves the taxpayer from payment of taxes due, because it was the duty of the taxpayer to make known to the State Tax Commissioner the change in net income made by the Internal Revenue Service. See § 9220-25 (4), Code 1942, Rec. ██ ██ It is not within the Tax Commissioner's power to forgive taxes due by an individual, and the destruction of tax returns does not relieve the taxpayer from taxes owed to the State.

(2) It is next contended that § 9220-26 (2), as it was written prior to the 1958 Amendment, required that income tax be determined and assessed within three years from the date the return was filed, except the three-year statute was extended to six years in cases where the reported net income of the taxpayer had been increased by the Bureau of Internal Revenue. Appellants point out that the last year reported was 1954, and that the report was due on or before April 15, 1955, and which was admittedly filed. It said: ''Adding six

years for the running of the statute of limitations as prescribed by the above-quoted section and the resulting date is April 15, 1961. * * * Thus it is seen that, April 15, 1961, appellants were vested by law with complete assurance that no claim could be made for additional State Income taxes for the year 1954 and years prior thereto.''

This argument is not now tenable, because appellants did not plead the six-year statute of limitations in their original bill, nor did they pursue their administrative remedy to show cause under the original § 9220-25 (3), Code 1942, or the Amendment thereto, as set out in Chap. 554, § 7, of the Laws of 1958. This Court has followed the universal rule that a statute of limitation — or a defense by a plea setting up the limitation of action — defense is personal and must be pleaded affirmatively in order for a defendant to take advantage of it. Lewis v. Buckley, 73 Miss. 50, 19 So. 197; Anderson v. McNeal, 82 Miss. 542, 34 So. 1; Patterson v. Ingraham, 23 Miss. 87; Hendricks v. Pugh, 57 Miss. 157; Bridgeforth v. Payne, 62 Miss. 777.

There is another rule of Administrative Law closely allied to the ''exhaustion of remedy'' rule known as ''exclusive administrative jurisdiction rule'', and is expressed in 2 Am. Jur. 2d, Administrative Law, § 779, p. 679, as follows: ''Unless there is a clear indication of a contrary legislative intent, if the legislature provides a remedy before an administrative agency which meets the demands of due process of law and does not invade the constitutional jurisdiction of a court, a court may be deemed to have no jurisdiction in the premises.'' The latter rule applies where a claim or demand is cognizable in the first instance by an administrative agency alone. 2 Am. Jur. 2d, § 790, p. 691.

This Court, and other courts, however, have held that where there is a void assessment, or where the law is unconstitutional, a taxpayer may seek relief

in the courts in the first instance. See City of Hatties-
burg v. New Orleans & N. E. R. Co., 141 Miss. 497, 106
So. 749; Edgerton v. International Company, Inc., 89
So. 2d 488 (Fla.); 42 Am. Jur., Public Administrative
Law, § 68, p. 379.

■■ It is also the rule that the law does not require
one to pursue administrative remedies before resorting
to court when the remedy would be of no avail. See
Cook v. Di Domenico, 135 So. 2d 245 (Fla. 1961); The
Crown Life Insurance Company v. Falla De Falla, 137
So. 2d 849 (Fla. 1962); City of Holly Hill v. State, 132
So. 2d 29 (Fla. 1961.)

■ ■ The validity of the tax laws in this case is
not challenged, and there is nothing in this record to
show that the remedies provided by statute would have
been of no avail to appellants, and we have therefore,
after careful consideration of the foregoing authorities
and rules of administrative law, come to the conclusion
that the Tax Commission had exclusive jurisdiction of
the income tax assessment due by appellants, and before
appellants could invoke the aid of an equity court, it
was necessary for them to have first proceeded by the
method and through the channel provided by law before
the Tax Commission. (§ 9220-31, Code 1942, Rec.) Ap-
pellants should have presented their defense to the as-
sessment for income tax, including the defense of limi-
tation of action, to the Tax Commission at the time
appellants were given notice "to file an appeal and show
cause or reason why the tax or deficiency should not
be paid." § 9220-25 (7), Code 1942, Rec.

We are of the further opinion that § 9220-27 (9), Code
1942, as Amended, applies to the facts in this case, and
prohibited the issuance of an injunction restraining the
collection of taxes due by appellants.

Finally, Appellants neither complained that they were
deprived of the defense of the limitation of action, nor
that the assessment was erroneous. Appellants chose

to challenge the authority of the State to impose the tax by bill in chancery, taking the risk that if such authority existed, their position in court would be that of delinquent taxpayers that had failed to exercise their administrative remedy. If, the Commissioner were in error in making the assessment, this could have been avoided by giving the information to the Tax Commission. Cf. West Publishing Company v. McColgan, Franchise Tax Com'r, 166 P. 2d 861 (Cal. 1946.) We are of the opinion therefore that the decree of the Chancery Court of Hinds County dismissing the original bill should be, and is, hereby affirmed.

Affirmed.

*McGehee, C. J., and Gillespie, McElroy and Brady, JJ.,* concur.

NOTES: § 9220-25 (1), Code of 1942: "Returns shall be examined by the commissioner within three (3) years from the due date or the date the return was filed, whichever is later, and no determination of a tax overpayment or deficiency shall be made by the commissioner, and no suit shall be filed with respect to income within the period covered by such return, after the expiration of said three-year period except as hereinafter provided.

        \*    \*    \*    \*    \*

"(3) When an examination of a return made under this act has been commenced, and the taxpayer notified thereof by regular mail, within the three-year examination period provided in subsection (1) of this section, the determination of the correct tax liability may be made by the commissioner after the expiration of said three-year examination period, provided that said determination shall be made with reasonable promptness and diligence.

"(4) Where the reported net income of a taxpayer has been increased or decreased by the internal revenue service, the three-year examination period provided in

subsection (1) of this section shall not be applicable in so far as the Mississippi income tax liability is affected by the specific changes made by said internal revenue service. A taxpayer who, without action by the commissioner, amends a return filed under this act on the basis of a change in net income made by the internal revenue service, and pays additional tax due thereon within sixty (60) days after agreeing to the federal change (and has received statement of the federal changes to which agreement has been made) or payment thereof, shall add interest to the additional tax at the rate of one half of one per centum (½ of 1%) per month, or part thereof, from the due date of the original return. If additional tax is assessed by the commissioner under subsection (2) of this section, and on the basis of a change in net income by the internal revenue service, then, in addition to the interest last above described, there may be added a penalty of ten per centum (10%) of the additional tax. Provided, that in either the case of a voluntary amendment of a return by the taxpayer, or the assessment of additional tax by the commissioner, on the basis of a change in net income by the internal revenue service, if any part of the deficiency is due to fraud with intent to evade tax, there shall be added a penalty of not more than one hundred per centum (100%) of the tax.

\* \* \* \* \*

"(6) A taxpayer may apply to the commissioner for revision of any return filed under this act at any time within three (3) years from the due date, or the date the return was filed, whichever is later. Provided, that where the reported net income has been reduced by the internal revenue service this limitation shall not be applicable in so far as the Mississippi income tax liability is affected by the specific changes made by said internal revenue service.

"(7) If, upon examination of a return made under this act or income tax laws previously in effect, a tax or a deficiency in tax is discovered, the taxpayer shall be notified thereof and given a period of not more than sixty (60) days after such notice is sent by mail in which to file an appeal and show cause or reason why the tax or deficiency should not be paid. Opportunity for a hearing before the commissioner shall be granted and a final decision thereon shall be made as quickly as practicable, and any tax or deficiency in tax found due after such hearing shall be assessed and paid, together with damages and interest, if applicable thereto, within ten (10) days after notice and demand by the commissioner."

Section 9220-26 (2), Code of 1942, Rec.: "* * * provided, that the three (3) year statute of limitation shall be extended to six (6) years in case where the reported net income of a taxpayer has been increased by the bureau of internal revenue for any taxable period * * *"

Section 9220-26, Code of 1942, Rec. (As Amended by Chap. 254, Laws 1958): "If no return is made by any taxpayer required to make a return as provided herein, the commissioner shall give written notice by certified mail to such taxpayer to make such a return within thirty (30) days from the date of such notice, and if such taxpayer shall fail to make such a return as he may be required to make in such notice, then the taxpayer's liability shall be determined by the commissioner from the best information available, and such determination shall be prima facie correct for the purpose of this act. To any tax determined to be due under this section, either by the taxpayer or the commissioner, there shall be added by the commissioner a penalty of not more than one hundred per centum (100%) and interest at the rate of one per centum (1%) per month, or part thereof, from the time the return was due until paid; provided, however, in the event such taxpayer,

in answer to said notice from the commissioner, shall state that he is not required under the law to make such returns, the commissioner shall investigate that question fully before proceeding further under this section.''

Section 9220-27, Code 1942, Rec.: ''* * * (9) Enforcement not to be Enjoined. — No injunction shall be awarded by any court or judge to restrain the collection of the taxes imposed by this act, or to restrain the enforcement of this act. The provisions of section 1340, code of 1942, and amendments thereto, shall not apply to taxes imposed by this act.''

Section 9220-31, Code 1942, Rec.: ''If the taxpayer or the attorney general is aggrieved by the decision of the commissioner, he may appeal to the state tax commission. In all hearings before the commission under this act, oral, documentary and other evidence may be introduced by either party and the findings of the commission shall be final, unless the taxpayer, or the state, by the attorney general, shall, within thirty (30) days from the date of the receipt of notice of such findings, file a petition in the chancery court of Hinds County, at the seat of government, requesting a hearing of the case on its merits, which petition shall be a concise statement of the facts as contended for by the party dissatisfied with the findings of the commission. If the taxpayer be the party filing said petition, it shall be accompanied with a bond, to be approved by the clerk of said court, in a sum double the amount in controversy, conditioned to pay the judgment of the court. On filing such petition, the clerk of the court shall give the opposite party (the attorney general, if the petition is filed by the taxpayer) notice of the proceedings as required by law. The chancery court shall have jurisdiction to hear and determine said cause, or issue joined as in other cases. If the petition be filed by the attorney general for the state, and the taxpayer be not a citizen of Hinds County, upon application of the taxpayer, the

suit shall be transferred to the county in this state of which the taxpayer is a citizen. Or the attorney general may file his petition in the first instance in the chancery court of the county of which such taxpayer is a citizen, which court in either case shall have jurisdiction to hear and determine the case on issues joined therein. Either the state or the taxpayer, or both, shall have the right to appeal to the supreme court, as in other cases. In any hearing before the tax commission, two members constitute a quorum.''

## ON MOTION TO CLARIFY

LEE, C. J.

The appellants in the above styled cause have filed a motion to clarify an order, entered by the Court on January 25, 1964, providing as follows:

''The motion of appellants to recall a mandate on a former judgment in this case and to stay the issuance of a mandate and execution on the judgment pending preparation and presentation of a petition for a writ of certiorari with the Supreme Court of the United States is sustained. Appellants are given ninety (90) days from this date in which to perfect their appeal to the Supreme Court of the United States, * * *.''

The cause had been affirmed by this Court on November 12, 1963. A suggestion of error was filed and was, by the Court, overruled on January 13, 1964. That was the final disposition of the cause. Consequently the mandate was issued for the enforcement of the judgment. It was at that juncture that the appellants filed their motion for the recall of the mandate and the stay of its issuance, pending the preparation and presentation to the Supreme Court of the United States of a petition for writ of certiorari.

The Chief Justice, when granting the foregoing order, was acting under 28 U.S.C.A. 2101(f) as follows:

"(f) In any case in which the final judgment or decree of any court is subject to review by the Supreme Court on writ of certiorari, the execution and enforcement of such judgment or decree may be stayed for a reasonable time to enable the party aggrieved to obtain a writ of certiorari from the Supreme Court. The stay may be granted by a judge of the court rendering the judgment or decree or by a justice of the Supreme Court, and may be conditioned on the giving of security, approved by such judge or justice, that if the aggrieved party fails to make application for such writ within the period allotted therefor, or fails to obtain an order granting his application, or fails to make his plea good in the Supreme Court, he shall answer for all damages and costs which the other party may sustain by reason of the stay * * *."

The period of 90 days was deemed a reasonable time to be allowed the appellants to enable them to apply to the Supreme Court of the United States for a writ of certiorari. This has been the recognized procedure and practice in this Court.

The motion to clarify is therefore sustained.

Motion to clarify sustained.

All Justices concur.