352 So.2d 1072 (1977)
NATIONAL COLLEGIATE ATHLETIC ASSOCIATION and Walter Byers
v.
Larry J. GILLARD, by and through Bob Tyler, as next friend, and Mississippi State University.
No. 49739.
Supreme Court of Mississippi.
December 7, 1977.
Threadgill & Smith, William J. Threadgill, Taylor B. Smith, Columbus, George H. Gangwere, Kansas City, Mo., for appellants.
*1073 Harry N. Rayburn, Jr., Stennett, Wilkinson & Ward, Erwin C. Ward, Dixon L. Pyles, Jackson, for appellees.
Before SMITH, LEE and BOWLING, JJ.
BOWLING, Justice, for the Court:
This is an appeal from the decrees of the Chancery Court of Oktibbeha County granting appellees, Mississippi State University and Larry J. Gillard, preliminary and permanent injunctions against appellants, National Collegiate Athletic Association (NCAA) and Walter Byers, the Association's executive director. The preliminary injunction was granted on September 19, 1975, and the permanent injunction was granted at the conclusion of a hearing on April 27, 1976.
We first need to dispose of appellees' "Motion to Dismiss Appeal for Mootness" filed on November 3, 1977. The allegation of the motion was to the effect that as appellee Larry Gillard was concluding his collegiate football athletic career under the preliminary and permanent injunctions, a review of the lower court's action is moot. Appellants filed opposition to the motion to dismiss for mootness, alleging that as there is a primary constitutional question involved to which this Court has not addressed itself, the Court should render a decision on this question. We agree and therefore deny appellees' motion to dismiss.
At the outset, we state in plain and unmistakable language that the issues raised in this cause are solely questions of law. A careful study of the record as applied to positive legal principles leaves this Court with only one choice. We must reverse and dismiss the cause.
Because of the widespread interest in the case and possible misunderstanding of the issues, we shall discuss them fully and plainly as possible.
Appellees filed their sworn bill of complaint requesting that appellants be enjoined from taking action that would prevent appellee, Larry Gillard, from participating in football games the remainder of the 1975 season. It was contended that Gillard was not accorded due process of law when NCAA declared him ineligible for that period of time. The principal allegation for this contention was that he was not a member of the NCAA and was not given sufficient opportunity to be heard through his school, Mississippi State University. It was contended that the actions of NCAA were contrary to the due process requirements of Article 3, section 14, of the Mississippi Constitution, and the Fourteenth Amendment of the United States Constitution.
To get a clear picture of circumstances and events leading to this contention, we relate them from the beginning. First, what is the NCAA? It is a voluntary association composed of approximately 828 colleges and universities. It has a constitution, bylaws, and rules and regulations. These are made, changed and amended at the annual meetings of the association. Representatives of all members are supposed to be at each annual meeting. Between these meetings the activities of the association are in charge of a "council," composed of eighteen members  the president and secretary-treasurer, both of whom are elected by the convention, and sixteen vice presidents. The membership area is divided into eight districts; each elects a vice president. The convention elects eight vice presidents at large. This council then represents all sections of the country. Various committees are formed as shall be discussed later. A full-time administrative staff is employed, with headquarters in Kansas City, Missouri.
The primary purpose for this voluntary association is set out in its constitution, which reads as follows:
The competitive athletic programs of the colleges are designed to be a vital part of the educational system. A basic purpose of this association is to maintain intercollegiate athletics as an integral part of the educational program and the athlete as an integral part of the student body, and, by doing so, retain a clear line of demarcation between college athletics and professional sports.
*1074 On December 17, 1964, the Mississippi Board of Trustees of Institutions of Higher Learning adopted certain policies on athletics, one of which was "standards of the NCAA and appropriate regional conferences shall be the standards of the several athletic departments."
As stated above, the voluntary members of the association adopt rules and regulations to carry out its purpose. These resulted in the following facts and circumstances as plainly shown by the record in the case.
Mr. Charles N. Shira, Director of Athletics for appellee, Mississippi State University, received a letter dated March 6, 1975, from Warren S. Brown, Assistant Executive Director of NCAA in charge of investigating possible rule or regulation violations. This letter was forwarded as required by these rules and was as follows:
 Mr. Charles N. Shira
 Director of Athletics
 Mississippi State University
 Mississippi State, Mississippi
 39762
Dear Mr. Shira:
Undoubtedly, you are familiar with the enforcement program of the NCAA and the responsibilities and obligations of the Association's Committee on Infractions. This letter is to advise you of a preliminary inquiry into the athletic policies and practices of Mississippi State University. Information has been submitted to and developed by the NCAA investigative staff indicating possible violations of NCAA legislation on the part of the University and its representatives. Consequently, the NCAA investigative staff will continue its preliminary inquiry into these allegations in accordance with the provisions of Section 2 of the "Official Procedure Governing the NCAA Enforcement Program," page 104, 1974-75 NCAA MANUAL. The inquiry will entail the use of a field investigator.
The purpose of a preliminary inquiry is to determine whether there is adequate evidence to warrant an official inquiry. If, following this preliminary checking, the information developed appears substantial, the Committee on Infractions will correspond with you in accordance with the provisions of Section 3 of the "Official Procedure Governing the NCAA Enforcement Program."
This letter is merely intended to acquaint you with the developments to date and assure you that you and your institution will be fully advised if there is sufficient evidence to warrant an official inquiry.
 Sincerely,
 /s/ Warren S. Brown
 Assistant Executive
 Director
After investigations by NCAA representatives as required by the rules, Dr. Giles, President of Mississippi State University, received a confidential letter from Mr. Brown, dated April 30, 1975. Again, this letter was written as required by NCAA rules to permit the University to make a thorough and independent investigation of possible violations found by the association. This letter was as follows:
 Dr. William L. Giles
 President
 Mississippi State University
 Mississippi State, Mississippi
 39762
Dear President Giles:
This letter (and enclosure) is the result of a preliminary inquiry which has been conducted by the NCAA into the athletic policies and practices of Mississippi State University. This inquiry was initiated in accordance with Section 2 of the "Official Procedure Governing the NCAA Enforcement Program," page 111, 1975-76 NCAA MANUAL.
The allegations and charges filed have been investigated and appear to be of sufficient substance and reliability to warrant an official inquiry. Accordingly, this letter (and enclosure) constitutes an official inquiry as described in Section 3 of the "Official Procedure Governing the NCAA Enforcement Program." In order that complete information may be developed, several questions are submitted to obtain the facts of these matters and to determine the practices and policies of *1075 Mississippi State University in certain areas of athletic administration.
In the interest of clarity and in accordance with general procedures established by the Committee on Infractions, the University is requested to copy each numbered item and the subparagraphs of each item contained in the official inquiry. The University's response should immediately follow each numbered item or subparagraph to which the information submitted is directly responsive.
Six copies of your response should be forwarded to the writer at the NCAA executive office and one copy should be forwarded to each member of the Committee on Infractions at the following addresses:
 Mr. Harry M. Cross Mr. John W. Sawyer
 Professor of Law Box 7401
 University of Washington Wake Forest University
 Seattle, Washington 98195 Winston-Salem,
 North Carolina 27109
 Mr. William L. Matthews
 Professor of Law Mr. Charles A. Wright
 University of Kentucky 2500 Red River
 Lexington, Kentucky 40506 University of Texas
 Austin, Texas 78705
 Mr. Arthur R. Reynolds
 Dean, Graduate School Mr. Warren S. Brown
 University of Northern (6 copies)
 Colorado P.O. Box 1906
 Greeley, Colorado 80631 Shawnee Mission,
 Kansas 66222
All responses should be on file with these individuals, including the writer, by July 1, 1975. The Committee on Infractions will meet in Kansas City, Missouri, July 11-14, to consider your response and would welcome an appearance by representatives of the University at that time. You will be notified of the actual appearance time and date well in advance of this meeting. In this regard, your attention is directed to Section 4 of the "Official Procedure Governing the NCAA Enforcement Program," which sets forth the general guidelines to be followed at the time of the University's appearance before the Committee on Infractions.
It is requested that Mississippi State University be represented at the Committee on Infractions' hearing by at least the following individuals: head football coach Robert Tyler and assistant football coaches Dennis Aldridge and Thomas Goode. In addition, any University student-athlete identified in an allegation may be present during the discussion of that allegation if such is the desire of the University.

The enforcement program of the NCAA is a cooperative undertaking involving individual member institutions and allied conferences working together through the NCAA  a unified effort designed to improve the administration of intercollegiate athletics.
You will note the statement immediately following each allegation requests that the University indicate whether the allegation is substantially correct and submit information to support its response. In accordance with the cooperative principle of the enforcement program, the University should make every effort to interview the principals identified in the allegations and collect related information, regardless of whether a request to do so is specifically contained in the allegation. The Committee's interest is for both the NCAA investigative staff and the University to collect, where possible, information for consideration in order to determine the validity of the allegations. If the University does not believe the allegation is substantially correct, it should support its position with any evidence upon which the conclusion is based. Further, if the University concludes the allegation is substantially correct, but not complete or accurate in all respects, it should submit additional information to clarify or adjust the allegation as written. You are called upon as the chief executive officer of Mississippi State University for your cooperation and assistance to the end that complete information related to this matter may be developed.
 Sincerely,
 /s/ Warren S. Brown
 Assistant Executive
 Director
(Emphasis supplied)
The record does not contain all possible charges included in the attachment to the letter. One of the possible violations was *1076 directed to a charge that Larry Gillard, during the fall of 1974, obtained articles of clothing from Howard's Clothing Store in Okolona, Mississippi, at a discount; that the store was owned by one Howard Miskelly, a representative of the University's athletic interests.
By letter of May 13, 1975, Dr. Giles was notified by the association of possible violations other than those attached to the letter of April 30. After receiving the letter of April 30, Dr. Giles appointed a committee of four staff and faculty members to conduct an investigation and prepare a report on all alleged violations, including that involving Gillard. Legal counsel was employed. A lengthy investigation was conducted. Depositions and statements were taken from many people, including Gillard.
According to testimony, the report prepared by the committee and its attorneys was voluminous, containing hundreds of pages. Unfortunately this Court does not have the benefit of any part of that report. It was not introduced in evidence at the trial of the cause. There was testimony that a detailed statement was secured from Gillard and he was advised of the part of the investigation relating to him. In due course, the entire report was forwarded to the association. The letter of April 30 requested the report by July 1. This date was extended upon request by Mississippi State University until August 1.
In accordance with NCAA rules, Dr. Giles received another confidential letter dated July 24, 1975, regarding the hearing before the Committee on Infractions. It reads as follows:
 Dr. William L. Giles
 President
 Mississippi State University
 Mississippi State, Mississippi
 39762
Dear President Giles:
The NCAA Committee on Infractions has scheduled an appearance by representatives of Mississippi State University for Monday, August 25, beginning at 9:00 a.m. (CDT) at the Alameda Plaza Hotel, Kansas City, Missouri.
In order to finalize the agenda, it would be appreciated if you would identify at your earliest opportunity all individuals who will represent the University at that time. Please note that only individuals officially representing the University may be present during the hearing and representatives of University representatives shall not be permitted to be present during the hearing. As noted in my April 30 letter, it is again requested that the University be represented by at least head football coach Robert Tyler and assistant football coaches Dennis Aldridge and Thomas Goode. In addition, it is requested that assistant football coach Smylie Gebhart represent the University. Also, student-athletes enrolled in the University may be present as institutional representatives for the discussion of the allegations in which they are identified if such is the desire of the University. Please note that the University's response is to be on file by August 1.
To assist you in preparing for the appearance, your attention is once again directed to Section 4 of the "Official Procedure Governing the NCAA Enforcement Program," pages 112 and 113, 1975-76 NCAA MANUAL. Section 4 establishes the general guidelines which will be followed at the hearing. At the outset, a University spokesman will be given the opportunity to make a brief introductory statement concerning the case in general, the contents of which should not relate to the substance of any specific allegation contained in the official inquiry. A representative of the NCAA enforcement staff will also be given the opportunity to make a similar introductory statement.
Thereafter, each item of the official inquiry will be discussed for the most part in numerical order with the institutional representatives and enforcement staff presenting relevant information pertaining to the allegations and the Committee taking part in the discussion as it desires.
Please note that the Committee encourages both the enforcement staff and institutional representatives to present only *1077 that information relevant to the substance of the allegation in order that there will not be unnecessary, extended discussion concerning the allegation.
After each allegation has been discussed, there will then be an opportunity for both the institutional spokesman and enforcement staff to make summary statements concerning the case in general.
Please contact me if you have any questions concerning the hearing procedures.
 Sincerely,
 /s/ Warren S. Brown
 Assistant Executive
 Director
(Emphasis supplied)
A hearing was held before the NCAA Committee on Infractions on Monday, August 25, 1975. In attendance were Dr. Giles, Mr. Bob Tyler, head football coach, several assistant coaches, and attorneys Erwin Ward and Harry Rayburn. According to Dr. Giles, Mississippi State University was represented by Attorney Erwin Ward but was not represented by Attorney Harry Rayburn. It should be noted here that in all proceedings subsequent to the meeting before the Committee on Infractions, Mr. Rayburn was the attorney of record for Larry Gillard individually.
By "confidential" letter dated September 10, 1976, Dr. Giles was forwarded the report and findings of the Committee on Infractions. Again the Court does not have the benefit, if any, of that official report except as it pertained to Larry Gillard; it might have been material in subsequent events regarding appeals. The evidence does show that the Committee found Mississippi State University to be guilty of twenty violations. The Gillard matter was number eleven.
The letter transmitting the findings of violations was as follows:
 Confidential
 Dr. William L. Giles
 President
 Mississippi State University
 Mississippi State, Mississippi
 39762
Dear President Giles:
The enclosed Confidential Report No. 104(28) [Case No. 520, Mississippi State University] is forwarded to you in accordance with Section 5 of the "Official Procedure Governing the NCAA Enforcement Program," page 113, 1975-76 NCAA MANUAL, and contains the Committee on Infractions' findings of violations of NCAA legislation or questionable practices and a statement of the proposed penalty to be imposed upon the University.

Section 5 provides that Mississippi State University has the opportunity to appeal the Committee on Infractions' findings, penalty, or both, to the NCAA Council. Written notice of appeal must be received by the NCAA executive director not later than 15 calendar days from the date the University receives the enclosed report. Receipt of the appeal notice, if any, prior to the expiration of the 15-day period would be appreciated if convenient to the University. (Emphasis supplied)
Such a notice of appeal shall contain a statement of the date the Committee's report was received by the University's chief executive officer, and a statement of each finding and/or penalty being appealed. In the case of appeal, please forward 30 copies of the written appeal notice, which shall not only contain a statement of the specific items being appealed, but also the reasons therefor in each instance. The Council may accept the Committee's findings and penalty, alter either one or both, or make its own findings and impose a penalty it believes appropriate. If the University desires to appeal, it may do so by appearing before the NCAA Council on October 7, 1975. The Council will meet at the Breckenridge Inn, St. Louis, Missouri. Note that at the time of appearance, the University's presentation and comments shall relate only to the actual findings of violation(s) and/or penalty which the University has identified to the NCAA executive director in its notice of appeal. Upon receipt of the notice of appeal, if any, the executive director will notify you of the actual appearance time.

*1078 This letter and enclosed report have been forwarded by certified mail, return receipt requested, in order that the actual date the 15-day period begins will be firmly established. If the University decides not to appeal to the NCAA Council before the 15-day period expires, it should notify the executive director without delay.
After the 15-day period expires or the University indicates earlier that it does not desire to appeal, the Committee on Infractions will make a public announcement of the findings of violations and the NCAA penalty. You will be advised of the time and date in advance of any such public announcement.
You are requested not to make any public announcement concerning the Committee on Infractions' findings or the proposed penalty until such time as the Committee on Infractions makes a public announcement or the matter has been resolved by the NCAA through its regular enforcement procedures.
The Committee on Infractions extends its appreciation to the executive and athletic administrations of Mississippi State University for their cooperation in this matter.
 Sincerely,
 /s/ Arthur R. Reynolds
 Chairman
 Committee on Infractions
The violation findings accompanying the letter found in regard to Gillard that "during the fall of 1974, through the arrangements of Howard Miskelly, a representative of the University's athletic interests, student athlete Larry Gillard, on at least two occasions, obtained articles of clothing at a 1/3 discount from Howard's Clothing Store, Okolona, Mississippi."
The penalty set out under violation No. 11 (Larry Gillard) ruled Gillard to be ineligible to participate further in football contests involving the University.
For reasons known only to appellees, the University chose not to appeal the findings of the Committee on Infractions to the NCAA Council. It could have appealed from all twenty violation findings or could have appealed only that involving Gillard. It should be noted that Gillard would have been eligible to play pending an appeal.
Another recourse open to appellees under NCAA rules and regulations was to request a hearing before the Committee on Eligibility, which has the authority to change the ineligibility penalty imposed by the Committee on Infractions. Appellees chose this course of action. The request for a hearing was made by Coach Bob Tyler in the form of a letter to the committee. This letter dated September 15, 1975, was as follows:
 Chairman of Committee on Eligibility
 c/o Warren Brown
 P.O. Box 1906
 Shawnee Mission, Kansas 66222
Gentlemen:
This is to request the consideration of the eligibility restoration of Mississippi State University student athlete, Larry Gillard. I refer specifically to the Confidential Report Number 104(28), Case Number 520 Mississippi State University Part I-A-1.
In accordance with NCAA instructions, Larry Gillard has been informed of his ineligibility and that the request for reinstatement has been communicated to your office. Also in accordance with NCAA instructions, a communicate from our President has been mailed to Howard Miskelly, Mississippi State University alumnus, informing him that he must sever all relationships formally and informally with the Athletic Department, its booster and support groups, and other possible associations.
We submit the following:
1. That the penalty of severance placed on Howard Miskelly hit specifically at the guilty party and the source of the violation.
2. That the then prospective athlete, Larry Gillard, was unaware of the possible violation connected with discounted purchases. He has stated that he was aware that he could not accept free merchandise for other benefits, however, it was the young man's understanding that *1079 he could purchase discounted clothing since athletes and general students from other schools were offered similar benefits at the same store. Since the hearing in Kansas City, I have talked with Mr. Miskelly and informed him that some of his supporting affidavits, while accurate, were somewhat lacking in strength, because they involved people close to the family. Mr. Miskelly informs me that this discount procedure has been available to many students at many colleges through the years and he stated also that he would have obtained affidavits from many others, but was simply not aware of what was needed.
With the burden of the total penalty imposed on our football program, i.e. probation, loss of scholarships, admonishment of coaches, severance of alumni, the loss of this young man from the squad simply adds greater difficulty to restructuring goals and morale in connection with our squad. On behalf of this fine young athlete, I feel that his future as a football player and as a student would be greatly damaged.
Naturally, we will appreciate your consideration of an immediate committee evaluation.
Respectfully,
 /s/ Bob Tyler
 Head Football Coach
 Mississippi State
 University
As a result of this letter, the Committee arranged a telephone conference in which all parties, including Gillard, participated.
By letter dated September 18, 1975, to Coach Tyler, he was advised that Gillard's ineligibility penalty had been reduced from total ineligibility to only the remainder of the 1975 season, which was his sophomore year. He would remain on full scholarship, including all benefits of lodging, food, education, physical equipment, and any other advantage he was enjoying. Everything would remain the same except not playing in the football games the remainder of that season. This letter was as follows:
 Mr. Bob Tyler
 Football Coach
 Mississippi State University
 Drawer 5827
 Mississippi State, Mississippi
 39762
Dear Mr. Tyler:
This is written notification of the action taken by the NCAA Council's Subcommittee on Eligibility Appeals under date of September 18 on the appeal made by Mississippi State University in behalf of student-athlete Larry Gillard. The following action was taken by the Subcommittee acting under the provisions of NCAA Constitution 4-2-(a)-O.I. 18.
In considering the appeal, it was noted that the University had declared the young man ineligible for intercollegiate football competition under the provisions of NCAA Constitution 3-1-(g)-(6). The Subcommittee declined the University's appeal for immediate restoration; further, Gillard shall remain ineligible for participation in intercollegiate football until the University has completed its 1975 intercollegiate football schedule. Please note that should the young man withdraw from school during this period or be permitted to otherwise participate during the 1975 intercollegiate football season, the matter of restoration of eligibility will be reconsidered by the Subcommittee. During the period of his ineligibility, he may engage in organized football practice sessions and, of course, continue to receive athletically related financial aid if such is the desire of the University.
In arriving at its decision, the Subcommittee considered the University's written appeal submitted under date of September 15 as well as the information Messrs. Tyler and Gillard provided during their participation in a telephone conference of the Subcommittee on September 18. As you know, NCAA Constitution 3-1-(g)-(6) provides for permanent ineligibility of the student-athlete involved. However, considering the nature and circumstances of the case, the Subcommittee concluded that some relief should be *1080 granted the institution from permanent application of this Constitutional provision to the young man's eligibility.
The Subcommittee will report its action to the NCAA Council during the Council's October 6-8 meeting at the Breckenridge Inn, St. Louis, Missouri. If it is the desire of the University to appeal the Subcommittee's action to the Council, it should do so in writing (approximately 30 copies) in advance of the Council meeting. Please be advised that should the University decide to appeal, it may be represented at the Council's meeting and may include Larry Gillard among its representatives if it so desires. (Emphasis supplied).
The Subcommittee has asked me to extend its appreciation to the University for its cooperation in this matter.
 Sincerely,
 /s/ Warren S. Brown
 Assistant Executive
 Director
No appeal was taken from the above committee findings; rather, on September 19, the day after the letter was written, a "bill of complaint for temporary injunction, permanent injunction, and other relief" was filed in the Chancery Court of Oktibbeha County by Larry Gillard and Mississippi State University. The sworn bill of complaint was signed by Dr. Giles for Mississippi State University, and by Bob Tyler as next friend of Gillard, a minor, then twenty years of age. The principal contention in the suit, as hereinbefore stated, was that the actions of the NCAA were in violation of Gillard's constitutional rights in that he was not granted due process of law. The defendants named in the suit were NCAA and Walter Byers, its executive director.
On September 19, 1975, without notice to the defendants, the chancellor ordered a writ of injunction issued prohibiting NCAA from carrying out its prior findings and from interfering in any way with the participation of Gillard in intercollegiate sports. Summons was then issued to the defendants to respond to the suit and appear to answer the request to make the injunction permanent. As a result of the preliminary injunction, Gillard participated in football games the remainder of the 1975 season.
Appellants appeared and filed their answer. On January 28, 1976, an amended bill of complaint was filed. This was answered on February 16, 1976, and a trial was had on April 6, 1976. We shall discuss the evidence introduced as it relates to the legal questions involved. The chancellor concluded that the complainant Gillard had "a constitutionally protected right" to participate in intercollegiate athletics and that he had been deprived of that right under the facts and circumstances presented. He further found that the internal rules, regulations and operations of the association could be voided by the court because Gillard, personally, was not a member of the association. The chancellor then issued a permanent injunction prohibiting NCAA from interfering with the right of Gillard to engage in intercollegiate athletics his junior and senior years. It is noteworthy that this is exactly what the NCAA Committee on Infractions had agreed to on September 18, 1975.
As stated at the outset, the disposition of this case is controlled solely by legal precedents. This was recognized by the chancellor when he said:
Though it may be a bicentennial syndrome and unfounded by legal precedent in this State, it is the opinion of this court and it now so holds that the opportunity for a professional football career is more than just a possibility for this minor complaint and is, therefore, a protected right under section 14 of the Mississippi Constitution of 1890, which provides as follows: "No person shall be deprived of life, liberty or property except by due process of law."
The lower court's statement that his decision was "unfounded by legal precedent in this State" is true. The question has not heretofore been presented in this State. He failed to state, however, that the question had been presented to many other courts, both state and federal, and his decree *1081 was contrary to all of them. This Court is persuaded by those precedents.
The basic decision of the case then is the simple statement that Gillard's "right" to engage in intercollegiate football is not a "property" right that falls within the due process clause of either section 14 of the Mississippi Constitution or the Fourteenth Amendment to the United States Constitution, both of which are identical. The reason for this principle is found in the following cases: Howard University, et al. v. NCAA, 166 U.S.App.D.C. 260, 510 F.2d 213 (1975); Parish, et al. v. National Collegiate Athletic Ass'n., 506 F.2d 1028 (5th Cir.1975); Associated Students, Inc., etc. v. NCAA, 493 F.2d 1251 (9th Cir.1974); Mitchell v. Louisiana High School Athletic Ass'n., 430 F.2d 1155 (5th Cir.1970); Oklahoma High School Athletic Ass'n. v. Bray, 321 F.2d 269 (10th Cir.1963); Scott v. Kilpatrick, 286 Ala. 129, 237 So.2d 652 (1970); Sult v. Gilbert, 3 So.2d 729 (Fla. 1941); Sanders v. Louisiana High School Athletic Ass'n., 242 So.2d 19 (La. 1970); State, ex rel. Missouri, State High School Activities Ass'n. v. Schoenlaub, 507 S.W.2d 354 (Mo. 1974); Tennessee Secondary School Athletic Ass'n. v. Cox, 221 Tenn. 164, 425 S.W.2d 597 (1968).
We shall not quote from all these cases. All of them, both federal and state, reach the same result. In Howard University v. NCAA, supra, we find the following:
Turning to the due process question, we should first note our substantial doubts whether appellant Howard and especially appellant Diane have recognizable property interests subject to due process protections under the standards of the Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). However, even assuming a recognizable interest, appellants were in no way denied due process. The requirements of due process are flexible and vary as the particular situation demands... . In the case sub judice, Howard ... was given notice and full particulars of the charges against it, the right to participate and defend its action before the Committee and Council, and the opportunity to appeal the rules of both bodies to the NCAA Convention. Diane had an opportunity to appeal on his own behalf but failed to do so, ... presumably because he was satisfied with Howard's representation of his interests. Moreover, his period of ineligibility was significantly reduced when Howard appealed on his behalf. We think the NCAA has complied adequately with any due process responsibilities it might have had.
In Parish, supra, the Court said:
Appellant's due process contentions are likewise unavailing. As the district court noted, we have held that "[t]he privilege of participating in interscholastic athletics must be deemed to fall . .. outside the protection of due process." . .
In Scott v. Kilpatrick, supra, the Supreme Court of Alabama said:
Participation in high school athletics is an extra-curricula activity subject to regulations as to eligibility. Engaging in these activities is a privilege which may be claimed only in accordance with the standards set up for participation.
The member schools are in a better position to promulgate rules governing participation in high school athletics than anyone else, and are fully cognizant for the reasons underlying such rules.
If officials of a school desire to associate with other schools and prescribe conditions of eligibility for students who are to become members of the school's athletic teams, and the member schools vest final enforcement of the association's rules in boards of control, then a court should not interfere in such internal operations of the affairs of the association... .
We hold that the speculative possibility of the complainant acquiring a football scholarship as shown under the facts presented furnishes no basis for a finding that the complainant was deprived of any property right.
In 68 Am.Jur.2d, Schools, section 244, we find:

*1082 Participation in interscholastic athletics is not a property right but a privilege which the school, or a voluntary association whose rules a school agrees to follow, may withdraw if the student fails to qualify for the privilege, subject, of course, to the limitation that schools may not arbitrarily allow the privilege to some and not to others... .
The Supreme Court of Tennessee, in Tennessee Athletic Ass'n. v. Cox, supra, said:
The cases cited below support the rule courts will not interfere in the internal affairs of a voluntary high school athletic association... .
Neither respondent has a legally recognized right to participate in high school athletics. The right to participate is a mere privilege.
As heretofore stated, the lower court found that Gillard's rights were not protected as Mississippi State University was the member of the NCAA and not Gillard, and that the actions of Mississippi State University were not adequate to protect Gillard's rights. We have carefully studied all of the above cited cases and others and find that his position was protected and advocated as much as any person involved in those cases. NCAA's letter of April 30, 1975, stated that "in addition, any University student-athlete identified in an allegation may be present during the discussion of that allegation if such is the desire of the University." This letter also listed the five members of the NCAA Committee on Infractions. They included professors of law from the University of Kentucky, University of Washington, and University of Texas. It also included faculty members of the University of Northern Colorado and Wake Forest University. This Court may take judicial knowledge that these law professors are noted for advocating the protection of constitutional rights of every person.
Again, the initial letter setting out violations dated July 24, 1975, and setting up the first hearing, stated that, "also, student athletes enrolled in the University may be present as institutional representatives for the discussion of allegations for which they are identified if such is the desire of the University."
Attorney Harry Rayburn, Gillard's personal attorney, attended and participated in the hearing before the NCAA Committee on Infractions.
The Committee on Eligibility, while giving the complainants substantial relief, on advising of appeal rights even from that decision, stated:
Please be advised that should the University decide to appeal, it may be represented at the council's meeting and may include Larry Gillard among its representatives if it so desires."
As seen above, no appeal was taken.
At the hearing on the permanent injunction, Gillard testified that he was perfectly satisfied with the way Coach Tyler handled the matter. Dr. Giles testified that everything had been done that could have been done to protect Gillard's rights. Regarding this, it is significant that although Coach Tyler signed the sworn bill of complaint as next friend of Gillard, he was not called to testify at the trial.
An exhaustive investigation was made by Mississippi State University on behalf of Gillard and the report was filed with the NCAA prior to the hearing before the Committee on Infractions. As heretofore stated, this was not included in the record before this Court and we do not know its contents. However, Dr. Giles testified that it was a thorough investigation of the Gillard allegations.
It is clear that the protection of Gillard's rights was paramount in the minds of everyone concerned. That protection, however, had to come within the framework of the association.
Due to the disposition of the case on the constitutional ground there is no need to reach the next assignment of error, that is, that Mississippi State University for itself and Gillard did not exhaust the administrative remedies available. Admittedly this was not done. The right to appeal was refused by appellee of every decision made by NCAA committees. The authorities are *1083 clear that the administrative remedies should be invoked before resorting to the courts. Everitt v. Lovitt, 192 So.2d 422 (Miss. 1966); Davis v. Barr, 250 Miss. 54, 157 So.2d 505 (1963); Scott v. Lowe, 223 Miss. 312, 78 So.2d 452 (1955); Ward, et al. v. David & Johnathan Lodge, 90 Miss. 116, 43 So. 302 (1907).
We therefore conclude that the courts cannot "make rules" to govern amateur athletics. All we can do is to apply legal precedents to the rules promulgated by the associations involved.
This case was considered by a conference of the Judges en banc, and it is the opinion of the Court that the judgment of the court below should be and it is reversed and the cause dismissed.
REVERSED AND DISMISSED.
All Justices concur, except SUGG, J., who took no part.