DICKINSON, Presiding Justice,
for the Court:
¶ 1. The only issue before us is whether a high' school athlete has standing to challenge adverse decisions concerning the student’s eligibility to participate in high school athletics. We hold that he does.
FACTS AND PROCEDURAL HISTORY
¶ 2. The DeSoto County School District (“School District”) — a public, taxpayer-funded entity — entered into a ’ contract with a private entity called the Mississippi High School Activities Association (“MHSAA”).[1] The terms of the contract allow MHSAA to decide whether School District students are eligible to play high school sports. In making its decisions, MHSAA applies its own rules and regulations, and neither the School District nor *276 its school board have input into the process.
¶ 3. In 2012, R.T. was a star quarterback for Wynne Public School in Wynne, Arkansas. His parents — the Trails — decided that a change of school districts would be in R.T.’s best interests, so in January 2013 they bought a house in Olive Branch and enrolled R.T. in Olive Branch High School. Their daughter was to remain in Wynne until the school year ended. MHSAA determined that R.T. was eligible to compete in spring sports and allowed R.T. to play baseball. MHSAA conditioned R.T.’s continuing eligibility on the Trails’ daughter also enrolling in the School District at the start of the 2013-2014 school year. But, because the Trails’ daughter did not want to leave her friends behind in Arkansas, the family decided that one parent would stay in Arkansas with their daughter, as they had done during the spring semester, and the other parent would move to Mississippi and remain with R.T.
¶ 4. On the eve of the 2013 football season, MHSAA notified the school and R.T. that, under its interpretation of its rules and regulations, R.T. was ineligible to play because it had determined that his family had not made a bona fide move to the School District.[2] Neither the School District nor Olive Branch High School appealed through MHSAA’s internal procedure, so the Trails immediately filed a petition for a temporary restraining order (TRO) and preliminary injunction in the DeSoto County Chancery Court. The chancellor signed an ex-parte order granting the TRO and revoking MHSAA’s adverse eligibility determination.
¶ 5. MHSAA then filed a motion to dismiss under Mississippi Rule of Civil Procedure 12(b)(6) arguing that the Trails lacked standing to challenge MHSAA’s eligibility determinations and that the Trails’ action was premature. The Trails argued that R.T. had standing as a third-party beneficiary to the contract between MHSAA and the School District. The chancellor granted MHSAA’s motion to dismiss all claims against the MHSAA and the DeSoto County School District and dissolved the original injunction, finding that the Trails lacked 'standing because “[t]he Mississippi Supreme Court has held that participation in high school athletics is not a legally enforceable right.” However, the chancellor granted the Trails’ motion for a stay while the Trails appealed the chancery court’s order dissolving their injunction and dismissing their case.
¶ 6. The Trails then filed a motion under Mississippi Rule of Civil Procedure 59(e) to amend the chancellor’s order, arguing that the chancery court was the “only bastion [of] relief for the kids” who had been affected by adverse eligibility determinations, and that R.T. had standing as a third-party beneficiary to the contract between the School District and MHSAA. In the interim, MHSAA twice petitioned this Court for writs of prohibition and mandamus and a petition for permission to file an interlocutory appeal.
¶ 7. After we directed the chancellor to rule on the Trails’ still-pending Rule 59(e) motion, the chancellor granted the motion finding that the Trails had standing, because R.T. was a direct beneficiary of the hardship provisions of the contract between MHSAA and the School District. The chancellor converted the TRO into a preliminary injunction. MHSAA yet again filed a petition for permission to file an *277 interlocutory appeal in this Court, which we granted in order to finally settle the issue.
ANALYSIS
¶ 8. This Court reviews questions of law, including questions of standing and the existence of legally cognizable claims, de novo.[3] Mississippi’s standing requirements — unlike the standing requirements in federal court — are quite liberal.[4] “Parties have standing to ‘sue or intervene when they assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, or as otherwise authorized by law.’ ”[5] But our liberal standing requirements are not without bounds:
[A]n individual’s legal interest or entitlement to assert a claim against a defendant must be grounded in some legal right recognized by law, whether by statute or by common law. Quite simply, the issue adjudicated in a standing case is whether the particular plaintiff had a right to judicial enforcement of a' legal duty of the defendant or ... whether a party plaintiff in an action for legal relief can show in himself a present, existent actionable title or interest, and demonstrate that this right was complete at the time of the institution of the action.[6]
¶ 9. Under the Restatement (Second) of Contracts, “a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and ... the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.”[7] In one of our older cases we articulated a three-part test to determine when a third party qualifies as an intended beneficiary:
(1) [w]hen the terms of the contract are expressly broad enough to include the third party either by name as one of a specified class, and (2) the said party was evidently within the intent of the terms so used, the said third party will be within its benefits, if (3) the promis-see had, in fact, a substantial and articulate interest in the welfare of the said third party in respect to the subject of the contract.[8]
¶ 10. In this case, the MHSAA Handbook — which forms part of the contract between MHSAA and its member schools — declares that its purpose “is to promote the general welfare of member schools in their relations with each oth *278 er.”[9] This artfully drafted statement of purpose carefully avoids any mention of student athletes. But MHSAA’s bylaws governing student-athlete eligibility make clear that the “[eligibility rules shall apply to all students participating in interscholastic athletic competition in all activities/athletics at all levels of play, including middle school.”
¶ 11. Under our three-part Sideboard test, we first look at whether “the terms of the contract are expressly broad enough to include the third party ... by name.”[10] This first requirement is met because students are expressly mentioned by name in MHSAA’s eligibility rules.
¶ 12. Second, we determine whether the third-party “was evidently within the intent of the terms so used.”[11] If so, “the said third party will be within its benefits.” [12] Clearly the student athletes are within the intent of MHSAA’s eligibility rules and within the benefits of those rules. After all, students who are ruled eligible are allowed to play sports, and those who are ruled ineligible are not.
¶ 13. And finally, “the promisee [must have] had, in fact, a substantial and articulate interest in the welfare of the said third party in respect to the subject of the contract.” [13] We can only hope that MHSAA had the welfare of the students in mind when it drafted its eligibility requirements. It seems obvious that MHSAA’s entire system of eligibility rules creates a substantial and articulate interest in the welfare of the student athletes.
¶ 14. So, under Mississippi’s law governing third-party beneficiaries, we find that student athletes are intended beneficiaries of MHSAA’s eligibility requirements. Applying our rules on intended third-party beneficiaries, it is clear that both MHSAA and its member schools intended the students to have a right to compete in athletic competitions and that the parties intended to give this benefit to high school students. The bylaws manifest an intent by both parties to create rules benefitting both member schools and student athletes. And, under our Sideboard three-part test, the specific procedures governing student athletes in the bylaws mean that student athletes, like R.T., are the intended beneficiaries of the contract between the MHSAA and its member schools.
¶ 15. Our previous decision in Mississippi High School Activities Association v. Farris is readily distinguishable from this case. In Farris, MHSAA threatened to impose sanctions and penalties on member schools allegedly for violating MHSAA’s rules.[14] We addressed only whether high school baseball players were the intended beneficiaries of MHSAA’s handbook’s notice and hearing procedures that allowed the school to challenge the sanctions and penalties.[15] We held that the high school baseball players were merely incidental beneficiaries to MHSAA’s notice and hearing provisions, which were intended only to benefit high schools facing sanctions.[16] Here, unlike Farris, the issue directly af *279 fects the student, and not merely the school.
¶ 16. MHSAA’s eligibility rules clearly benefit and apply to the student athletes. Indeed, Section 2.2.2 of the eligibility bylaws states that “[i]t is a school’s responsibility to educate student-athletes, parents, coaches, and other appropriate persons on MHSAA rules, including eligibility rules that affect them.” (Emphasis added.) So the eligibility rules, by MHSAA’s own language, affect student athletes.
¶ 17. MHSAA’s eligibility requirements touch on student age,[17] medical history,[18] behavior,[19] drug and substance use,[20] academic requirements,[21] and residency requirements.[22] These elaborate rules clearly are designed to benefit student athletes. Indeed, these rules indicate that MHSAA has a “substantial and articulate interest in the welfare of the said third party in respect to the subject of the contract.”[23] While MHSAA proclaims that its purpose is only to govern relations between its member schools, its rules regulating the eligibility of student athletes indicate otherwise.
¶ 18. MHSAA’s intent to benefit individual student athletes also is manifested in MHSAA’s policy of sanctioning member schools any time an individual student challenges MHSAA in court and loses.[24] Under its contract with member schools, MHSAA reserves the right to sanction the member school for a student’s unsuccessful litigation. This rule, which is just one part of MHSAA’s elaborate eligibility rules, undermines MHSAA’s claim that students do not have standing to challenge its eligibility determinations in court. All of MHSAA’s eligibility rules are intended to benefit the student athletes, and student athletes have standing to challenge adverse eligibility determinations.
CONCLUSION
¶ 19. While it generally is true that high school students have no legally protected right to participate in high school *280 athletics,[25] once a school decides to create a sports program and establish eligibility rules, the school — or as in this case, MHSAA — has a duty to follow those rules; and it may be held accountable when it does not do so. Without the students, there would be no school, no principal, no school board, no MHSAA, and no athletic program, so we find it fairly obvious that high school student-athletes are among the intended beneficiaries of high school athletic programs, and the rules that govern them — whether those rules are administered by the school, the school district, or a private entity with whom the school contracts.
¶ 20. And where, as here, the school delegates its authority to control student eligibility through a contract with a private entity, we hold that'students directly affected by the contract are third-party beneficiaries of that contract. For us to say otherwise would run contrary to the very reason for extracurricular activities, which is to enrich the educational experience of the students.[26] Accordingly, we hold that R.T. does have standing to challenge MHSAA’s eligibility decision that prevented him from playing high school sports. The decision of the chancery court is affirmed, and the case is remanded to the Chancery Court of DeSoto County for proceedings consistent with this opinion.
¶ 21. AFFIRMED AND REMANDED.
KITCHENS, CHANDLER, KING AND COLEMAN, JJ., CONCUR. RANDOLPH, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., LAMAR AND PIERCE, JJ. PIERCE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., RANDOLPH, P.J., AND LAMAR, J.

. The contract between the school and MHSAA consists of an annual membership form that the school is required to complete and return to MHSAA, pursuant to section 3.4.1 of the MHSAA Handbook, and the MHSAA Handbook, itself. See footnote 9 and accompanying text below.

. The MHSAA’s byzantine eligibility requirements are codified in Part II, Section 2 of the MHSAA’s handbook.

. See, e.g., Children's Med. Grp., P.A. v. Phillips, 940 So.2d 931, 933 (Miss.2006) (citing Webb v. DeSoto Cnty., 843 So.2d 682, 684 (Miss.2003)) ("[W]e review de novo the denial of a motion to dismiss for failure to state a claim.”).

. Dunn v. Miss. Dep't of Health, 708 So.2d 67, 70 (Miss.1998) (citing Fordice v. Bryan, 651 So.2d 998, 1003 (Miss.1995)) ("Mississippi’s standing requirements are quite liberal.”).

. Dunn, 708 So.2d at 70 (quoting Fordice, 651 So.2d at 1003) (emphasis added).

. City of Picayune v. S. Reg'l Corp., 916 So.2d 510, 526 (Miss.2005) (citing State v. Quitman Cnty., 807 So.2d 401, 405 (Miss.2001); Am. Book Co. v. Vandiver, 181 Miss. 518, 178 So. 598 (1938)).

. Restatement (Second) of Contracts § 302 (1981); see also Simmons Housing, Inc. v. Shelton ex rel. Shelton, 36 So.3d 1283, 1286 (Miss.2010) (citing Burns v. Washington Savings, 251 Miss. 789, 796, 171 So.2d 322, 325 (1965)) ("Third-party-beneficiary status arises from the terms of the contract.”).

. Yazoo & M.V.R. Co. v. Sideboard, 161 Miss. 4, 133 So. 669, 671 (1931) (citing Smyth v. City of New York, 203 N.Y. 106, 96 N.E. 409 (1911)).

. Miss. High School Activities Ass’n v. Farris, 501 So.2d 393, 396 (Miss.1987) ("The Court looks to the handbook to see if any rights spring to appellees, or if the alleged broken conditions were placed in the handbook for the direct benefit of the appellees.”).

. Sideboard, 133 So. at 671.

. Id.

. Id.

. Id.

. Farris, 501 So.2d at 394-95.

. Id. at 395.

.Id.

. Section 2.6 Age and Entry Requirements: "A student becomes ineligible for interscholastic participation if he/she has reached his/ her 19th birthday before August 1 of that school year.”

. Section 2.8 Medical History Evaluation and Examination: "Prior to tryopts or practices in the season in which he/she participates, each student shall pass a medical examination. ...”

. Section 2.35 Felony: "The MHSAA Executive Committee and Legislative Council strongly recommend that any student indicted for a felony not be allowed to participate in interscholastic sports/activities during the time of indictment and/or conviction.”

. Section 2.9 Abuse and/or Misuse of Illegal Substances: “The MHSAA recommends that each member school develop and implement a substance abuse/misuse policy, including procedures for chemical testing of student-athletes.”

. Section 2.10 Scholastic Requirements: "The MHSAA requires students participating in MHSAA sanctioned competitions to make ‘satisfactory progress toward graduation.' "

. Section 2.27 Bona Fide Residence: "A student must attend school in the school district in which his/her parents are bona fide residents.” Section 2.28 Bona Fide Change of Residence State: "Determination of what constitutes a bona fide change of residence shall depend upon the facts of each case....” And Section 2.29 Bona Fide Move Investigation states: "The MHSAA shall conduct an investigation of a bona fide move if it appears a bona fide change of residence has not been made.”

. Sideboard, 133 So. at 671.

. These are the same individual students who are denied any internal mechanism to challenge the MHSAA's adverse-eligibility determinations.

. See Nat’l Collegiate Athletic Ass’n v. Gillard, 352 So.2d 1072, 1081 (Miss.1977) (quoting Scott v. Kilpatrick, 286 Ala. 129, 237 So.2d 652, 655 (1970)) ("Participation in high school athletics is an extra-curricula activity subject to regulations as to eligibility. Engaging in these activities is a privilege which may be claimed only in accordance with the standards set up for participation.”).

. See Mississippi High School Activities Association, http://www.misshsaa.com/about. aspx (last visited May 6, 2015):
The public-and private schools that make up the MHSAA account for 94% of the total school population and because of this our Association realizes the tremendous responsibility we have to the people of Mississippi. The Mississippi High School Activities Association and the activities it sponsors are often called "the other half of education,” when, in fact, we are much more than that. Surveys have shown that students who participate in extracurricular activities stay in school and achieve to a higher degree academically than those who do not participate. Surveys also show that these same students develop high moral fiber and that their values are molded in such a way that they are truly the good citizens that make this country great. Because of this proven importance of activities to a student's education, our Association cannot be just "the other half.” Activities are instead an integral part of any quality educational program.
(Emphasis added.)