WALLER, Chief Justice,
dissenting:
¶ 35. I cannot agree with today’s holding that the Hattiesburg High School failed to state a claim against the activities association with which it contracted to manage its students’ participation in extracurricular activities. The majority admits that a member of a private, voluntary association such as the Mississippi High School Activities Association (MHSAA) may seek injunctive relief against the association but holds that courts cannot grant relief from an arbitrary decision. ■ The majority concludes that “[tjhere simply is no cause of action for ‘arbitrariness.’ ”
¶ 36. Today’s decision stands in direct conflict with longstanding precedent recognizing that a member of a private, voluntary association may seek relief in court from the association’s arbitrary decision. It also conflicts with this Court’s barely six-month-old decision upholding a student’s standing to sue the MHSAA for misapplying its rules in an eligibility decision. In Mississippi High School Activities Association, Inc. v. R.T. ex rel. Trail, 163 So.3d 274, 275 (Miss.2015), a student was aggrieved by 'having been declared ineligible due to'the MHSAA’s alleged misapplication of its rules governing residency requirements. In words that directly contravene this -Court’s holding today, we stated that “once a school decides to create a sports program and establish eligibility rules, the school — or as in this case, MHSAA — has' a duty to follow those rules; and it máy bé held accountable when it does not do so.” Id. at 280 (emphasis added). With respect, I cannot join the majority’s abrupt and inexplicable departure from precedent.

*1217
A. Cause of Action

¶ 37. Many courts have considered the legal status of private, voluntary associations. Contract law governs the relationship between an association and its members. Cunningham v. Indep. Soap & Chem. Workers, 207 Kan. 812, 486 P.2d 1316, 1320 (1971). “The constitution and bylaws of a voluntary unincorporated association, provided they are not unreasonable, nor contrary to public policy nor to constitutional or statutory requirements, constitute a valid enforceable contract between the members and the association and govern their mutual rights and liabilities.” Libby v. Perry, 311 A.2d 527, 532 (Me.1973). When a person becomes a member of a private, voluntary association, the person “impliedly agrees to be bound by, and becomes a party to, such contract, and his rights and duties are measured by the terms of such constitution and bylaws.” Id. This Court has echoed these precepts, stating that:
“Clubs and societies, whether religious, literary, or social, have the right to make their own rules upon the subject of the admission or exclusion of members, and these rules may be considered as articles of agreement to which all who become members are parties. Accordingly, an association has the right to prescribe the rules and regulations defining the qualifications of members, and may impose’ such terms and conditions upon membership, not contrary to law, as it may choose; ■ members must comply with those terms and conditions in order to be entitled to the benefits of membership. Such conditions apply as well to existing as to prospective members.”
[[Image here]]
“It is generally held that by becoming a member of a voluntary association, one engages to be bound by its rules, subjects himself to its discipline, and assumes, of necessity, such obligations as are incident to membership, as, for example, the obligation to pay the dues and assessments prescribed by the dues and assessments necessary to defray expenses.”
Lowery v. Int’l Bhd. of Boilermakers, 241 Miss. 458, 472, 130 So.2d 831, 836 (1961) (citations omitted).
¶ 38. It is equally well-established that an aggrieved member of a private, voluntary association may sue for relief from an arbitrary decision. Finn v. Beverly Country Club, 289 Ill.App.3d 565, 225 Ill.Dec. 528, 683 N.E.2d 1191, 1193 (1997) (private, voluntary associations’, “conduct is subject to judicial review only when they fail to exercise power consistently with their own internal rules ... [generally, a court will not interfere with the internal affairs of voluntary associations, absent mistake, fraud, collusion or arbitrariness”); Jones v. Nat’l Collegiate Athletic Ass’n, 679 So.2d 381, 382 (La.1996) (stating that “[cjourts should not interfere with the internal affairs of a private association except ... when the ... proceedings have not been conducted fairly and honestly, or ... cases of fraud, lack of jurisdiction, the invasion of property or pecuniary rights, or when the action complained of is capricious, arbitrary, or unjustly discriminatory”); Nat’l Ass’n for the Advancement of Colored People v. Golding, 342 Md. 663, 679 A.2d 554, 561 (1996) (stating that “if an organization acts inconsistently with its own’ rules, its action may be sufficiently arbitrary to invite judicial review”); Cal. Dental Ass’n v. Am. Dental Ass’n, 23 Cal.3d 346, 152 Cal.Rptr. 546, 590 P.2d 401, 405-06 (1979) (stating that “courts will nevertheless accept jurisdiction over private voluntary organizations when the aggrieved party can demonstrate ‘an abuse of discretion, and a clear, unreasonable and arbitrary invasion of (its) private *1218 rights’ ”); Pinsker v. Pac. Coast Soc'y of Orthodontists, 12 Cal.3d 541, 116 Cal.Rptr. 245, 526 P.2d 253, 263 (1974) (application to association could not be-.denied-.arbitrarily).
¶ 39. This rule applies with equal force to high school activities associations. Robinson v. Kan. State High Sch. Activities Ass’n, 260 Kan. 136, 917 P.2d 836, 840 (1996). And this rule has been adopted in Mississippi. Lowery v. Int’l Bhd. of Boilermakers, 241 Miss. 458, 473, 180 So.2d 831, 836 (1961). Lowery was a suit in chancery court brought by a local union member seeking reinstatement. Id. at 462, 130 So.2d at 832. The Court cited the rule that a union constitution is a contract between the union members and the association. Id. at 459, 130 So.2d at 834. This .Court held that the actions of a private, voluntary association are subject to judicial review, providing this version of the familiar standard:
The authorities seem to hold fairly uniformly that the courts will not intervene except for fraud perpetrated upon a member, or lack of jurisdiction. . “It is well established that courts will not interfere with the internal affairs of voluntary associations, except in such cases as fraud or lack of jurisdiction..,, The decisions of the tribunals of an association with respect to its internal affairs will, in the absence of mistake, frauds eolhmm% or arbitrariness,. be accepted by the co'iwis as conclusive. Moreover, it is held that the courts will not undertake to inquire into the regularity of the. procedure adopted and pursued by such tribunals in reaching their conclusions.”
Id. at 473, 130 So.2d at 836 (emphasis added) (citations omitted).
¶ 40. This Court also reviewed claims of-arbitrariness in Multiple Listing Service of Jackson, Inc. v. Century 21 Cantrell Real Estate, Inc., 390 So.2d 982 (Miss.1980). There, two affiliated organizations, the Board of Realtors and the Multiple Listing Service of Jackson (MLS), sanctioned a real estate agent and imposed a reprimand and six months’ probation, a thirty-day suspension, and a fine of $300. Id. at 983. The Court found that the Board/MLS was a private, voluntary association and that its actions were subject to judicial review for arbitrariness. Id, at 984. The Court held that, the sanction of the reprimand and probation was not properly before the Court because Cantrell had not exhausted the administrative remedies provided by the Board. Id. at 983. The Court held that the Board’s decision regarding the thirty-day suspension comported with all of its rules and regulations and that- Cantrell was afforded due process. Id. at-984. Therefore, the Court held that the thirty-day suspension was not arbitrary and capricious. Id. But the Court held that the $860 fine imposed by MLS was arbitrary because the MLS -had no schedule of maximum fines that could be imposed to which each member had agreed. Id. at 985.
¶ 41. The Court of Appeals applied this precedent in Morf v. North Central Mississippi Board of Realtors, Inc., 27 So.3d 1188 (Miss.Ct.App.2009). The Morfs inadvertently had listed two properties in the Multiple Listing Service without the owners’ permission, and the Board charged the Morfs with violating its rules. Id. at 1190. Applying the standard of review from Century 21, the Court of Appeals reviewed the Board’s actions to determine whether they were arbitrary. Id. at 1191. The Court of Appeals found that the Board had acted arbitrarily because it had failed to follow its own rules in punishing the Morfs. Id, The Court of Appeals held that the Board had not followed applicable disciplinary guidelines, and that the penalties were not *1219 commensurate with those the Board had imposed on other violators. Id. at 1198.
¶ 42, These cases plainly establish that, in Mississippi, as in other jurisdictions, relief may be sought in court from arbitrary action by a private, voluntary association. Our decision in Mississippi High School Activities Association, Inc. v. R.T. ex rel. Trail, 163 So.3d 274 (Miss.2016), was consistent with this precedent. In Trail, this Court held that, although schools, not students, are members of the MHSAA, students are third-party b.enefl-eiarles of the MHSAA’s rules and regulations governing eligibility. Id. at 278. Like Tiaria Griffin, R.T. was a star high school athlete. Id. at 276. R.T. moved to Mississippi from Arkansas and enrolled in Olive Branch High School, and the MHSAA declared him eligible to participate in athletics. Id. But the MHSAA conditioned R.T.’s continuing eligibility upon his sister also enrolling in the school district the next year. Id. R.T.’s sister did not enroll because she elected to stay with her mother in Arkansas, while R.T. lived with his father in Mississippi. Id. The MHSAA determined under its rules that R.T. had not made a bona fide move to the school district, and he was. ineligible to participate in athletics. Id, When Olive Branch High School declined to pursue relief, R.T., through his father and next friend, sought a temporary restraining order and preliminary injunction in chancery court. Id. The MHSAA moved to dismiss for lack of standing because R.T. was not a third-party beneficiary to the agreement between the high school and the MHSAA. Id.
¶ 43. This Court found that the Trails had standing because R.T. was a third-party beneficiary of the contract between the high school and the MHSAA under the three-part Sideboard test. Id, at 278 (citing Yazoo & M.V.R. Co. v. Sideboard, 161 Miss. 4, 133 So. 669, 671 (1931)). First, we found that the terms of the .contract were broad enough to include students because students are mentioned by name in the eligibility rules. Trail, 163 So.3d at 278. Second, we held that student athletes “are within the intent .of MHSAA’s eligibility rules and within the benefits of those rules.” Id. And third, we held that the MHSAA’s eligibility rules created a substantial and articulate interest in student welfare. Id. This Court stated that “[a]ll of MHSAA’s eligibility rules are. intended to benefit the student athletes, and student athletes have standing to challenge adverse eligibility determinations.” Jd. at 279.
¶ 44. We explicitly recognized in Trail that a student is a third-party beneficiary of the eligibility provisions of the-membership contract between a school and the MHSAA. M- at 280. Now, despite Trail’s proclamation that students have- standing to challenge the MHSAA’s eligibility decisions, this Court holds that a high school in contractual privity with the MHSAA cannot seek relief from an eligibility decision. The Court so holds- by reasoning that HHS’s complaint alleging the MHSAA did not follow its own rules and acted arbitrarily and' capriciously fails to state a claim. But HHS’s claims that the MHSAA did not follow its own rules and acted arbitrarily and capriciously are precisely the kind of claims that have been recognized as justiciable by this Court and other courts across the nation. HHS contracted with the MHSAA. for it to determine student eligibility to participate in extracurricular activities and to do so in a manner free from arbitrariness. By pleading that the MHSAA had applied its rules arbitrarily, HHS adequately pleaded a breach of this agreement. Under our caselaw, it is clear that no further allegations were necessary. Contrary to the majority’s position, HHS’s allegation that *1220 the MHSAA had failed to follow its own rules and had applied them arbitrarily in its eligibility determination is a claim for breach of contract.- It is a claim that the MHSAA breached its rules and bylaws, which both HHS and the MHSAA agreed to follow. The complaint did not need to include the magic words “breach of contract" ■ to fulfill basic pleading requirements.

B. Standard of Review

¶ 45. I next address the precise standard of review which should be applied to the decisions of the MHSAA, considering the unique role of the MHSAA in our state education system. The MHSAA’s member schools agree to be bound by the rules and regulations in the MHSAA’s handbook. Trail, 163 So.3d at 276. Although the MHSAA is a private, voluntary association, it is uniquely situated due to its substantial entwinement with government. By statute, the local school boards are empowered to regulate athletic programs. Miss.Code Ann. § S7-7-301(q). (Rev.2013). But the school-boards have delegated their statutory authority to regulate athletics to the MHSAA. Miss. High Sch. Activities Ass’n. v. Coleman, 631 So.2d 768, 774 (Miss.1994). And because the MHSAA’s authority is derived from statutory authority, its actions are “state action for the purpose of constitutional analysis.” Id.; see also Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass’n, 531 U.S. 288, 291, 298, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001) (holding that regulatory enforcement by a high-school athletic association was state action for the purposes of the Fourteenth Amendment due to the pervasive entwinement between the athletic association and public schools and officials). In Trail, we recognized that, because student athletes are the intended beneficiaries of the MHSAA’s eligibility requirements, student athletes have standing to bring suit to challenge an adverse eligibility decision. Trail, 163 So.3d at 278.
¶46. The case of National Collegiate Athletic Association v. Gillard, 352 So.2d 1072 (Miss.1977), dealt with an eligibility decision of the National Collegiate Athletic Association (NCAA), another private, voluntary organization that regulates collegiate athletics. Like the MHSAA, the NCAA promulgates and enforces rules and regulations governing athletics at hundreds of member schools. ' Id. at 1073. Gillard overturned an injunction granted by a chancellor against a ruling by the NCAA that a'student was ineligible to play football at Mississippi State- University. Id. at 1083. This Court rejected the student’s due-process claim that he had been deprived of a property right because participating in interscholastic athletics is a privilege that is not afforded due-process protection.[7] Id. at 1081. Quoting a decision of the Supreme Court of Alabama concerning a voluntary high school athletic association; the Court stated that:
Participation in high school athletics is an extra-curricula activity subject to regulations as to eligibility. Engaging *1221 in these activities is a privilege which may be claimed only in accordance with the standards set up for participation.
The member schools are in a better position to promulgate rules governing participation, in ■ high school athletics than anyone else, and are fully cognizant for the reasons underlying such rules.
If officials of a school desire to. associate with other schools and prescribe conditions of eligibility for students who are to become members of the school’s athletic teams, and the member schools vest final enforcement of- the association’s rules in boards of control, then a court should not interfere in such internal operations. of the affairs of. the association ....
Id. at 1081 (quoting Scott v. Kilpatrick, 286 Ala. 129, 237 So.2d 652, 655 (1970)). This Court also stated that “courts will not interfere in'the internal affairs of a voluntary high school athletic association.” Gillard, 352 So.2d at 1082 (quoting Tenn. Secondary Sch. Athletic Ass’n v. Cox, 221 Tenn. 164, 425 S.W.2d 597, 602 (1968)). We further found that Gillard should have exhausted his administrative remedies within the NCAA before pursuing relief in court. Gillard, 352 So.2d at 1082. We stated “[t]he authorities are clear, that the administrative remedies should be invoked before resorting to the courts.” Id. at 1082-83. Finally, we stated that “courts cannot ‘make rules’ to govern amateur athletics. All we can do is to apply legal precedents to.the rules promulgated by the associations involved.” Id. at 1083.
¶47. Although the MHSAA is not a state administrative agency, its pervasive entwinement with our public schools indicates that its- functions are comparable to those of a state administrative agency. And there is no functional difference between the well-established standard of review for private, voluntary associations and the standard of review for administrative agencies. “The decisions of the tribunals of an association with respect to its internal affairs will, in the absence of mistake, fraud, collusion, or arbitrariness, be accepted by the courts as conclusive.” Lowery, 241 Miss. at 473, 130 So.2d at 836. This Court 'will affirm an administrative agency’s decision unless it “(1) was unsupported by substantial evidence, (2) was arbitrary and capricious, (3) was beyond the power of administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party.” Elec. Data Sys. Corp. v. Miss. Div. of Medicaid, 853 So.2d 1192, 1202 (Miss.2003) (quoting Tillmon v. Miss. State Dep’t of Health, 749 So.2d 1017, 1021 (Miss.1999)). I observe that a decision that is arbitrary and capricious is necessarily unsupported by substantial evidence. Elec. Data Sys. Corp., 853 So.2d at 1203 (quoting Miss. Bureau of Narcotics v. Stacy, 817 So.2d 523, 526-27 (Miss.2002)). The decisions of both private, voluntary associations and state administrative agencies are subject to judicial review for arbitrariness, and judicial review of a challenge to a decision of the MHSAA must focus on whether that decision was arbitrary and capricious. Lowery, 241 Miss. at 473, 130 So.2d at 836. This limited standard of review affords deference to eligibility decisions and checks judicial interference with “the internal affairs of a voluntary high school athletic association.” Gillard, 352 So.2d at 1082 (quoting Tenn. Secondary Sch. Athletic Ass’n v. Cox, 221 Tenn. 164, 425 S.W.2d 597, 602 (1968)).
¶48. I would find that, because the MHSAA is a private, voluntary association, HHS properly sought injunctive relief in chancery court by filing a complaint alleging that its eligibility decision was arbitrary and capricious.5 And I would find that the chancellor properly reviewed the *1222 eligibility decision,.for arbitrariness. But I -note one deficiency in the proceedings below. Rather than restricting review to the record before the MHSAA, the chancellor held a trial and admitted testimony and exhibits extraneous to the MHSAA’s record. The MHSAA argues that the chancellor improperly denied its motion in.-li-mine to restrict review to its record and findings and erroneously tried the matter. .HHS argues that, because, it sought equitable relief in the form of • an injunction, the chancellor properly expanded the record to include evidence outside the MHSAA’.s .record. I would hold that, because HHS grounded its claim for injunc-tive relief in the argument that the eligibility decision was.arbitrary and capricious, the record and. findings of,the MHSAÁ were all that was needed for the chancellor to determine whether , the MHSAA’s actions were indeed arbitrary and whether preliminary and. permanent injunctive relief was warranted. Therefore, I would hold that the chancellor erred by holding a trial. I now turn to a review of the chancellor’s decision.

G. Whether the MHBAA’s deaision was a/rbitrary and capricious.

1. Procedural History
¶ 49, Tiaria Griffin was a star basketball player, at Lawrence County High School (LCHS). At the beginning of her senior year, Tiaria and her brother Steven transferred to HHS. The MHSAA declared Tiaria and Steven ineligible to participate in athletics at HHS for the 2011-2012 season, and Tiaria, Steven, and their mother, LaShannon Slay, filed a complaint for injunctive relief in the Chancery Court of Forrest County on September 30, 2011. On the same day, the chancellor issued a temporary restraining order that enjoined the MHSAA from ruling Tiaria ineligible for athletic competition for ten days. Also on the same day, the MHSAA filed a" notice. of removal to the United States District Court for the Southern, District of Mississippi, Hattiesburg Division.
¶ 50. On October 7, 2011, the date set for the hearing on the temporary restraining order, the chancellor held a hearing attended only by counsel for the plaintiffs. The chancellor opined that, in light of the removal to federal-court, the state court proceedings were stayed and the temporary restraining order would remain in effect. But on November 22, -2011, the federal district court held that the Chancery Court of Forrest County had lacked jurisdiction to conduct the October 7, 2011, hearing or to extend the temporary restraining, order, and that its action was “null and void as a matter of law.” (Quoting Granny Goose Foods v. Brotherhood of Teamsters and Auto Truck Drivers, 415 U.S. 423, 439, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974)), the federal district .court held that the temporary restraining order had expired by its terms in. ten days, because “[a]n ex parte temporary restraining order issued-by a state court prior to removal remains, in force after removal no longer than it would .have- remained ¡in effect under state law.”
¶ 51, On December 12,2011, the federal district court remanded the case to the Chancery Court, of Forrest County. The same day, the chancellor held a hearing to dispose of several matters, including the plaintiffs’ motion for a preliminary injunction, which was granted. The injunction prevented Tiaria from participating in basketball games on December 18, 2011, and December 16; 2011, but allowed her to participate in the remaining games through January 9, 2012. The chancellor granted- HHS’s motion to intervene. The chancellor denied the MHSAA’s motion to recuse and its motion -in limine to limit review to the record at the MHSAA. In ruling on the MHSAA’s motion to dismiss *1223 for lack of standing,, the chancellor dismissed Steven from the lawsuit because the MHSAA subsequently had ruled him eligible to participate in athletics, ..but allowed Slay’s and Tiaria’s suit to proceed.
¶52. The MHSAA filed a petition-for an interlocutory appeal from the denial of its motion to dismiss Slay and Tiaria for lack of standing. This Court granted the petition and dismissed Slay and Tiaria, leaving HHS as the sole plaintiff. -At a January 9, 2012, hearing, the MHSAA argued á motion to transfer venue, which was denied. The chancellor extended the preliminary injunction until February 6, 2012. On February 6, 2012, the chancellor again extended the preliminary injunction, allowing Tiaria to play through March 19, 2012. The chancellor held a hearing and heard evidence before granting each preliminary injunction. This Court denied MHSAA’s petition for an interlocutory appeal of the denial of the motion to transfer venue. The trial occurred on September 11, 2012; under Mississippi Rule of Civil Procedure 65(a)(2), the evidence from the preliminary-injunction, hearings became part of the trial record.
2. Evidence Before the MHSAA
¶ 58, The MHSAA’s record was placed into evidence at the preliminary-injunction hearings and at the trial. The MHSAA’s Anal decision at a hearing' dn November 8, 2011, ruled Tiaria ineligible due to violations of three of MHSAA rules arid- regulations: (1) Tiaria’s coach on her summer Amateur Athletics Union (AAU) basketball team also coached at HHS, which violated the special-inducement rule; (2) Tiaria’s family had moved to Hattiesburg for athletic purposes within sixty days of the start of the school year, which violated a residency rule that a move for athletic purposes- must occur- more than sixty days before the beginning- of the school year; and (3) Tiaria was -not in good standing at LCHS because she had not yet completed her punishment, for a failed drug test in spring 2011, which violated the rule that a student must leave a former school in good standing in order to participate in athletics at a new school.
¶ 54. The MHSAA’s initial decision was memorialized in a “Special Eligibility Form” filled out by a representative of each school and Don Hinton, the executive director of the MHSAA. On August 28, 2011, the HHS representative wrote that Tiaria had changed schools because her parent had relocated to Hattiesburg when her job ended. On August 25, 2011, Daryl Scoggin, the principal of LCHS, wrote that he did not consider Tiaria to be in good standing at LCHS, and that he considered her not eligible at HHS, Scoggin noted “see attached documentation” and that he was waiting for legal advice before releasing the documentation. On August 29, 2011, Hinton wrote that the MHSAA had declared Tiaria ineligible. . The form indicated that the completed form-was faxed to both schools.
¶ 55. A fax date indicates that, on August 25, 2011, before the eligibility ruling, Scoggin toed letters to MHSAA supporting his opinion, that Tiaria was ineligible. One letter was from Tiaria’s basketball coach at LCHS, Vicki Rutland, to Scoggin. This letter stated that, on July 26, 2Ó11, Slay said Tiaria was going to transfer to HHS., Slay said that she was moving for a new job, and that Tiaria wanted to move because, due to an incident in April 2011, she would have to sit out the first two weeks of the basketball season if she stayed at LCHS. Rutland expressed, concern that Tiaria was moving to HHS because Burnell Wesco, the coach of Tiaria’s AAU team, also coached at HHS.. Rutland stated -that she thought there was a pattern of recruiting at HHS.
*1224 ¶ 56. Scoggin also faxed a letter from himself to Rickey Neaves, the MHSAA’s associate director of athletics, explaining his views on Tiaria’s eligibility. Scoggin stated that Tiaria had practiced with the LCHS team all summer and had attended the LCHS basketball camp. Scoggin stated that he had met with Slay on July 27, 2011, and she had told him about the move. Slay stated she had begun looking for a place to live in Hattiesburg in May 2011 and had put down a deposit on a rental property in early June, but was unable To pay the'first month’s rent or to move at that time. Scoggin opined that Tiaria had moved within sixty days of the start of school. Scoggin also expressed concern that Wesco had been actively recruiting Tiaria to play at HHS.
¶ 57. HHS appealed the' MHSAA’s ruling, and a hearing occurred before the MHSAA’s executive board (the Board) on September 7, 2011. The clearest and most concise summation of what occurred at the hearing is the Board’s minutes, which state the following:
Mr. Hinton and Mr. Neaves briefed the Board on Tiaria and Steven Griffin, transfer students from [LCHS] to [HHS], Mr. Hinton stated that Tiaria Griffin is a high profile basketball player at Lawrence County. He also stated that according to documentation, the mother leased a home oh June 1, 2011 and only made a deposit, not rent for the month. At that time the mother received one door key, no mailbox key, nor garage remote. Mr. Neaves stated that Tiaria attended the entire summer basketball program at Lawrence County and also went to team camp with Lawrence County. He also stated that Tia-ria' failed one drug test at Lawrence County, prior to leaving. Also, Tiaria’s AAU coach is Coach Burnell Wesco, who is the ninth grade basketball coach at Hattiesburg.
Dr. Daryl Scoggin, Principal, Mike Davis, Athletic Director, and Coach Vicki Rutland from [LCHS] appeared before the Board. Dr. Scoggin stated that on July 27, 2011, he met with [Slay] and stated to her that he had heard rumors of Tiaria moving to Hattiesburg. Ms. Slay stated to him that she had contacted Hattiesburg in April/May concerning a job, as her job in the Lawrence County district was coming to an end. Dr.. Scoggin also stated that Tiaria tested positive for marijuana' in the spring and according to - district policy, she would miss two weeks of a sport season, as this was her first offense. Dr. Scoggin also stated that the family lives in a trailer, which is in front of the grandmother’s house, in the Lawrence County school zone. Dr. Scoggin also stated that Ms. Slay’s job ended in May,' but when- she withdrew Tiaria in July, she owed- $1,000 for fundraisers, which she paid in cash, at the time-she was without a job.
Coach Rutland stated that in her meeting with Ms. Slay, on June 27, 2011, Ms. Slay verified that'Tiaria was leaving Lawrence County — stating that Tiaria was being threatened on Facebook. Coach Rutland also stated that Ms. Slay is the team’s statistician. Coach Rut-land said that. Tiaria attended Lawrence County’s summer program and she coached Tiaria in the All-Star games held July 8-9, 2011. Coach Rutland wit- . nessed Tiaria being, friendly with Coach Ernie Watson (boy’s basketball coach at Hattiesburg) during the All-Star games. Coach Rutland also stated that some of the Lawrence County games, in which Tiaria participated, had shown up on Coach Wesco’s website, her AAU coach.
Coach Ddvis stated that Tiaria had shown up for Lawrence County’s first football pep rally of the 2011 school year *1225 and she was also, seen on a Saturday playing basketball with boys during open gym.
Appearing before the Board from Hattiesburg were: Coach Cheyenne Trussell, Athletic Director, Coach Bur-nell Weseo, Coach Ernie Watson, Coach Debose-Jackson, Tiaria Griffin, and Ms. Slay, mother of Tiaria Griffin. Coach ■ Trussell questioned if the MHSAA did a thorough investigation concerning residency, drug test, and recruiting. He stated that he received a call last spring from Ms. Slay asking what she needed to do to move her children into the Hattiesburg school district. The. conversation did not include making her children eligible for athletics. Coach Trussell stated to Ms. Slay that a bona fide move must be made.
Ms. Slay stated that her job in the Lawrence County School District was coming to an end in May and her other part-time job in Monticello closed in July, 2011. She stated that she moved to Hattiesburg to take a new job, to be closer to her oldest daughter' (attending Mississippi Gulf Coast Community College), and still be close to her family in Monticello. Ms. Slay stated she received the keys to her rental the end of May and started moving in on June 1st and was completely moved in by June 4th or -5th. She stated that Tiaria did not move until July, in order that she could attend the Lawrence County summer basketball program and play in the All-Star game. Ms. Slay stated that she did not tell Cpach Rutland that Tiaria would not return to [LCHS] until after the' All-Star games. Ms. Slay stated that she currently works for the Hatties-burg Public Schools, as - a teacher assistant.
Coach Wescoe [sic] stated that Tiaria started playing AAU basketball when she was in the seventh grade. He stated that it is his job, as an AAU coach, to showcase players, help them develop as players. He stated that four of the five starters for'Lawrence County play for his AAU team. He also stated that he had nothing to gain by Tiaria transferring to Hattiesburg, since she is a senior this school year and he coach’s [sic] ninth grade basketball.
Coach Debose-Jackson [the varsity basketball coach at HHS] stated that she made no contact with Tiaria at' any time.
Tiaria stated that she had asked Coach Watson if he had any money so that she and a friend could get something at the concession stand. Coach Watson stated that he joked with Tiaria that he bet she couldn’t score 30 points.
Larry Dolan motioned [sic] to grant eligibility to Tiaria and Steven Griffin with Marietta James seconding the motion.
Vote 3:6, motion failed.
The Board voted to gather additional information to further consider the eligibility of Tiaria and Steven, consisting of proof of the date the electricity was turned on in their rental home, copies of electricity bills, dates' of money orders or cashier’s checks used for rent, copies of such money orders or cashier’s checks, and two proofs of residency.
¶58. The Board reconvened on September 15, 2011, to consider the additional evidence that had beeh submitted on the question of whether Slay’s move had occurred more than sixty days before school started on August 7,-2011. These documents included a lease on a -home in Hat-tiesburg dated June 1, 2011. The electricity bills showed that Slay’s landlord, Shirley Shoemaker, had paid the electricity bills until July 19, -2011, when the electricity was transferred- to Slay. The Board *1226 found that very little electricity had been used in June and in the first part of July compared to the usage after the bill was transferred to Slay, and that “according to. the power bills, the family was not residing in Hattiesburg prior to 60 days of the beginning of school.” The Board recognized that Slay had submitted copies of money orders showing she had paid rent for the months of June and July. Slay explained that she had used little electricity due to travel. But the Board found that, while “the lease cannot be refuted,” because the electricity bill was not transferred to Slay until July 19, 2011, the move occurred within sixty days of the start of school. The Board voted four-six to deny HHS’s appeal.
¶59. On October 11, 2011, Cheyenne Trussed, the executive director of student activities of the Hattiésburg Public School District, requested reconsideration of the decision at the upcoming November 3, 2011, Board meeting. The Board granted the request. According to the November 3, 2011, hearing minutes, Trussed argued that- the MHSAA had not adequately investigated Tiaria’s case. He admitted that, while Coach Wesco does not assist the girls’ varsity basketbad team,-he sometimes sat on the bench during varsity games. The Board again voted to find Tiaria ineligible to participate in athletics at HHS based on the three rules violar tions. However, the Board voted to grant eligibility to her brother, Steven, finding that he had not moved, for athletic purposes.
¶ 60. On November 8, 2011, MHSAA provided HHS with a notice of penalty for playing Tiaria in a game on November 6, 2011, against McComb High School. ■ As a penalty for playing an ineligible player, MHSAA placed HHS on probation through the end of the season and ordered it to forfeit the game, - remove Tiaria from the team, and pay a $500 fine. On November 14, 2011, MHSAA penalized HHS for playing Tiaria in a game against Harrison Central High School on November 8, 2011, while on probation. The MHSAA ordered HHS to forfeit the game and to remove Tiaria from the team and extended probation to the post-season. On November 21, 2011, MHSAA penalized HHS for playing Tiaria in a November 18, 2011, game against Moss Point High School while on probation. It ordered-HHS to forfeit the game and to pay a $1,000 fine and suspended HHS through the end of the school year. Although all three notices of penalty informed HHS of its right to appeal, it is undisputed that HHS did not avail itself of that right.
3. Trial
¶ 61. The chancellor held a five-day trial on the issues of Tiaria’s eligibility and the penalties assessed against HHS for playing Tiaria after she had been deemed ineligible. At the trial, many of the witnesses who had appeared before the Board gave in-depth testimony about the evidence of the three rules violations and the MHSAA’s decision-making process. Because I would find that the chancellor erred by. holding a trial on the merits of the eligibility decision instead of limiting review to the MHSAA’s record, I do not recite the additional evidence concerning the eligibility decision that was adduced at the trial, much of which was cumulative of the MHSAA’s record,
4. The MHSAA’s decision was not arbitrary and- capricious.

a. The Special-Inducement Rule

¶ 62. The MHSAA declared Tiaria ineligible based upon three violations of its rules and regulations. Of these three rules violations, the evidence most strongly supported a violation of the.MHSAA’s special-inducement rule. The 2011-2012 *1227 MHSAA Handbook, which contains the applicable rules and regulations, states:
A pupil must not have been given any special inducement of any kind to attend a school to play on an athletic team. SPECIAL. INDUCEMENT IS INTERPRETED TO MEAN:
[[Image here]]
10. A student that plays for a coach or team made up of students from a school (school B) other than his/her home school during the non-sports season may not be eligible for school B unless a hardship is granted by the MHSAA or the student has been in school B for one calendar year from the date of enrollment.
¶ 63. By its terms, the special-inducement rule creates an unrebuttable presumption of inducement when the specified facts exist. If a student transfers to a school that employs, as a coach, the student’s non-sports-season coach, the rule is violated. The rule contains no exception for a situation where the transfer student does not actually play for the coach’s team at the new school. Nor does the rule contain an exception for a situation where no evidence suggests that the coach urged the student to transfer.[8] Here, there was evidence before the MHSAA that, in the summer of 2011, Tiaria played on an AAU team coached by Wesco, who was the ninth-grade girls’ basketball coach at HHS. The MHSAA found that these facts violated the special-inducement rule because, during the non-sports season, Tiaria had played for a coach from HHS. Therefore, she was ineligible to play .at HHS for one calendar year unless a hardship was granted. ■
¶ 64. The chancellor, found that this decision was arbitrary and capricious. The chancellor found that Tiaria’s family had moved to Hattiesburg not for athletic purposes, but because Slay had lost her job in Lawrence County and had obtained employment in the Hattiesburg Public School District. The chancellor concluded that the MHSAA had strictly interpreted the special-inducement provision, and that doing so was unfair because it would prevent a student from participating in athletics if her family moved for employment. The chancellor ruled that the MHSAA should have granted a hardship to Tiaria because her family had moved dúé to Slay’s job change.
¶65. The chancellor’s findings reveal that she impermissibly reweighed the facts and substituted her judgment for that of the MHSAA. Substantial evidence before the MHSAA established a violation of the special-inducement rule because Wesco, Tiaria’s summer AAU coach, worked as a coach at HHS. The chancellor determined that the MHSAA should not have applied the special-inducement rule because Tiaria had moved due to her mother’s job change. Even if that fact could be considered a legitimate reason to overturn the eligibility decision; the MHSAA did not find that Tiaria had moved due to her mother’s job change. Rather, the MHSAA found, after weighing the conflicting evidence, that the family had moved to Hattiesburg to further Tiaria’s athletic career.- And while the chancellor found that the MHSAA should have granted a hardship waiver, the MHSAA’s rules clearly provide that a hardship application must be made by the school’s principal, and-it is undisputed that HHS made no hardship application in this case.[9] I would hold that the MHSAA’s *1228 finding of a violation of the special-inducement rule was not arbitrary and capricious.
&. The Residency Requirement
¶ 66. The MHSAA also found a violation of the residency requirement based on its finding that Tiaria’s family had moved to Hattiesburg for athletic purposes within sixty days of the beginning of school. The 2011-2012 MHSAA Handbook provides that “[a] pupil must attend school in the school district in which his parents are actual bona fide residents,” and defines “bona fide residence” as a residence “where the family, actually lives.” The Handbook also states that “[a] transfer student is one whose parents or guardian has moved from one school district to another and established a bona fide residence therein for some other purpose than, conferring athletic or interscholastic eligibility on the student.” The sixty-day rule states: “[i]f a family established a bona fide residence in a school area for the purpose of making a pupil eligible for athletics, the family-must establish a bona fide residence at least 60 days prior to the opening of school.”
¶ 67. The chancellor accepted copious testimony and documentary evidence concerning the circumstances of the family’s move to Hattiesburg, and she concluded that the family had moved due to Slay’s job change and not for athletic purposes. But, as I would hold, appellate review to determine whether an eligibility decision of the MHSAA is arbitrary is properly limited to the record and findings of the MHSAA. Turning to those findings, the MHSAA- found that Tiaria’s family had moved to • Hattiesburg for athletic purposes, that is, to further Tiaria’s athletic career. That finding triggered the requirement that the move’must have occurred -at least sixty days before school began on August 7, 2011.
¶ 68. I would find that the MHSAA’s conclusion that Tiaria’s family had moved “for the purpose of making a pupil eligible for athletics” within sixty days of the beginning of the 2011 school year was supported by substantial evidence. Rutland’s and Scoggin’s letters supported the conclusion that Coach Wesco had induced Tia-ria’s move to Hattiesburg. The MHSAA, in its experience evaluating recruiting allegations, was entitled- to weigh and rely upon the opinions of Rutland and Scoggin that Wesco had been trying to recruit Tia-ria to play for HHS. While competing evidence was before the MHSAA that the move was prompted by Slay’s loss of her teacher’s assistant position in Lawrence County and assumption of a new teacher’s assistant position in Hattiesburg, the MHSAA was entitled to weigh this evidence against the, conflicting evidence of recruiting and to conclude that Tiaria’s family had moved to Hattiesburg to further her athletic career. HHS argues that the MHSAA’s finding that Steven was eligible to participate in athletics conflicts with its finding that the family had moved for athletic purposes, making its decision arbitrary. But the MHSAA’s decisions as to Steven and Tiaria do not conflict because the MHSAA was permitted to find that, because the family had moved to further Tiaria’s athletic career, not Steven’s, Steven was not disqualified under the rule.
¶69. And the MHSAA’s finding that Tiaria’s family had moved within sixty days of the beginning of school also was supported by substantial evidence. While *1229 a lease dated June' 1, 2011, supported Slay’s contention that she had moved the family to Hattiesburg more than sixty days before school started, the* electricity bill remained in the name of the landlord until mid-July, and electricity.bills showed drastically increased power- usage after mid-July. The MHSAA deemed these facts to be significant indicators of. the. actual date of the move. Also, according to Seoggin’s letter, Slay told him in July that she had placed .a deposit on a home in June, but had been unable to move at that time. And basketball practice schedules showed that Tiaria consistently practiced with the LCHS team in the month of June. Again, the MHSAA weighed the conflicting evidence and determined that Tiaria’s family had moved to Hattiesburg within sixty days of the beginning of the school year. Its conclusion was supported by substantial evidence and was not arbitrary and capricious,
c. The Lack-of-Goodr-Standing Rule
¶70. The MHSAA also found Tiaria ineligible because she was not in good standing when she left LCHS. The Handbook states that “[a]ny transfer student must be in good standing from the school he/she is leaving in order to receive eligibility at his/her new school.” Scoggin’s letter stated.that Tiaria was not in good standing at the end of her school year at LCHS. Testimony at the September 7, 2011, hearing indicated that Tiaria was not in good standing because she had failed a drug test and, as a penalty, she -would have to sit out the first two games of the 2011-2012 basketball season. Rutland testified that Tiaria had played for LCHS in an all-star game in July.
¶ 71. The chancellor found that the MHSAA’s finding that Tiaria was not in good standing was arbitrary and capricious. The chancellor, on: review of subpoenaed drug-test records, from LCHS, found that the redacted records were unclear as to whether Tiaria actually had failed the drug test. The chancellor further found that, because LCHS had allowed Tiaria to play in the all-star game in July, LCHS was disingenuous when it deemed her not in good standing. HHS argues that the chancellor essentially found that, because LCHS had played Tia-ria in in the all-star game, it was estopped from deeming her not in good standing when she transferred to HHS.
¶ 72. The evidence before the MHSAA substantially supported its finding that Ti-aria was not in good standing at LCHS when she transferred to HHS. Before the MHSAA, it was undisputed that Tiaria had failed the drug test, and the chancellor erred by analyzing the subpoenaed drug-test records, which were outside the record'and findings of the MHSAA. I recognize that the fact that LCHS allowed Tia-ria to play in an all-star game when it had deemed her not in good standing and suspended her fi’om the first two games of the regular season casts doubt on the legitimacy of LCHS’s claim that Tiaria was not in good standing when she transferred to HHS. But the school boards have entrusted to the MHSAA the duty to assess the credibility of both sides of an athletic-eligibility dispute. A decision that is fairly debatable cannot be arbitrary and capricious. Elec. Data Sys. Corp., 853 So.2d at 1203 (quoting Stacy, 817 So.2d at 526-27). While reasonable minds could differ, I would find that the testimony of Scoggin that Tiaria was not in good standing constituted substantial evidence supporting the decision of the MHSAA.
5. The chancellor lacked jurisdiction to reverse penalties imposed on HHS because HHS did not exhaust its administrative remedies.
¶73. The MHSAA argues, that the chancellor erred by vacating the penalties *1230 it had imposed upon HHS for playing Tia-ria- while ineligible on November 5, 2011; November 8, 2011; and November 18, 2011. The MHSAA argues that the chancellor lacked jurisdiction to address the penalties because HHS had failed to exhaust its administrative remedies. The MHSAA’s 2011-2012 handbook gives a school five- days to appeal to the Executive Board from the imposition of.a penalty. HHS argues that exhaustion would have been futile because the propriety of the penalties rested on the MHSAA’s declaration that Tiaria was ineligible, and that issue already had been determined adversely to HHS and was the subject of litigation before the chancery court.
. ¶ 74. This Court has held that a party must exhaust all administrative remedies provided by a private, voluntary association before .seeking injunctive relief against the association. Multiple Listing Serv. of Jackson, Inc. v. Century 21 Cantrell Real Estate, Inc., 390 So.2d 982, 983 (Miss.1980). The failure to exhaust administrative remedies presents a jurisdictional question which is subject to de novo review. Town of Bolton v. Chevron Oil Co., 919 So.2d 1101, 1104 (Miss.Ct.App.2006). “A complainant must exhaust the administrative remedies available to him before resorting to the courts for resolution of his dispute.” State v. Beebe, 687 So.2d 7.02, 704 (Miss.1996). But there are exceptions to the exhaustion requirement. The following factors weigh against application of the doctrine of exhaustion: (1) “the pursuit of the administrative remedy would result in irreparable harm”; (2) “the agency clearly lacks jurisdiction”; (3) “the agency’s position is clearly illegal”;' (4) “the dispositive question is one of law”; (5) “exhaustion would be futile”; and (6) “comparatively, the action can be disposed of with less expense and more efficiently in the judicial arena.” Pub. Employees' Ret. Sys. v. Hawkins, 781 So.2d 899, 906 (Miss.2001) (citing Miss. Dep’t of Envtl. Quality v. Weems, 653 So.2d 266, 278 (Miss.1996)). We also have declined to apply the exhaustion doctrine when “(1) no adequate administrative remedy was provided; (2) there was reasonable doubt as to' the availability and adequacy of the administrative remedy; and (3) the question in dispute was purely legal, the interpretation of which did not require the agency’s expertise.” Hawkins, 781 So.2d at 906 (citing Campbell Sixty-Six Exp., Inc. v. J. & G. Exp., Inc., 244 Miss. 427, 440, 141 So.2d 720, 726 (1962)).
¶ 75. I would not find an exception to the exhaustion requirement. I would hold that HHS was required to exhaust the MHSAA’s' appeal process before seeking relief from the chancery court. While HHS argues that its use of the the MHSAA appeals process would have been futile, Trussell testified that HHS decided to play Tiaria while she was ineligible because of the chancellor’s October 7, 2011, ruling that had extended the temporary restraining order. Yet, HHS never presented that argument to the MHSAA by appealing the penalties. An appeal would have permitted the MHSAA to revisit its decision to impose the penalties after hearing HHS’s arguments, and the MHSAA was fully empowered to alter its decision if it determined relief was warranted.- Under these circumstances, I find no exception to the exhaustion doctrine. Because HHS failed to exhaust its administrative remedies by appealing the penalties to the Executive Board, the chancellor lacked jurisdiction to address the -penalties, and they should be reversed.
D. Conclusion,
¶ 76. .1 would hold that the decision of a private, voluntary association such as the MHSAA may be reviewed for arbitrariness. And I would find that the decision *1231 of the MHSAA declaring Tiaria ineligible to participate in athletics at-HHS in the 2011-2012 school year was -not arbitrary.. I would- further find that, because HHS failed to exhaust its administrative reme-, dies by appealing the penalties, the chancellor had no jurisdiction to address the penalties. • ,
RANDOLPH, P.J., JOINS THIS OPINION IN PART A ONLY. CHANDLER AND ICING, JJ„ JOIN THIS OPINION IN PART.

. Since Gillard, it has been settled that the actions of the NCAA are not state action for - the purposes of the Fourteenth Amendment. Nat'l Collegiate Athletic Ass’n v. Tarkanian, 488 U.S. 179, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988). In Coleman, this Court explained that Taxkanian’s reasoning did not apply to the MHSAA because, there, "[t]he University had not delegated governmental powers to the NCAA., while in the case sub judice, the school boards have delegated governmental powers to the Association.” Coleman, 631 So.2d at 774. In Brentwood, the United States Supreme Court held that the actions of a high school athletic association were state action due to the pervasive entwinement between the athletic association and the public schools and public officials. Brentwood Acad., 531 U.S. at 298, 121 S.Ct. 924.

. The MHSAA’s adoption of'a rule that inducement is presumed when a student transfers to a school that employs the student’s off-season coach indicates that it considered the situation so rife with the potential for impropriety that nothing further need be shown.

. The facts of this case' do not obviously implicate the hardship rules, which provide that *1228 serious injury or prolonged illness are grounds for a hardship request. The rules state that ''ordinary cases of ineligibility shall not be considered as coming under the hardship category.”