# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2024-CA-01312-SCT

*DON HEWITT, ADVANCED TECHNOLOGY*
*BUILDING SOLUTIONS, LLC, AND TUNICA*
*HOSPITALITY & ENTERTAINMENT, LLC*

*v.*

*TJM PROPERTIES, INC., TJM TUNICA, LLC,*
*AND TUNICA COUNTY, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/13/2024 |
| TRIAL JUDGE: | HON. CATHERINE FARRIS-CARTER |
| TRIAL COURT ATTORNEYS: | HERBERT J. IRVIN |
| | GARRET TYJUAN ESTES |
| | TERRIS CATON HARRIS |
| | ALFRED THOMAS TUCKER, III |
| | JOHN KEITH PERRY, JR. |
| | CHARLES MICHAEL LANFORD |
| | ONETTA WHITLEY |
| COURT FROM WHICH APPEALED: | TUNICA COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | HERBERT J. IRVIN |
| | TERRIS CATON HARRIS |
| ATTORNEYS FOR APPELLEES: | ALFRED THOMAS TUCKER, III |
| | JOHN KEITH PERRY, JR. |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 03/19/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE RANDOLPH, C.J., ISHEE AND BRANNING, JJ.**

**ISHEE, JUSTICE, FOR THE COURT:**

¶1.     This case arises from a failed public-private redevelopment effort in Tunica County,

Mississippi, involving a distressed property owned by a private entity and a series of

planning, financing, and interim operating agreements designed to facilitate redevelopment.

Tunica County (the County) hoped to acquire the land from the private owner TJM Properties, Inc., or its affiliate TJM Tunica, LLC (TJM), to create a convention center complex. Plaintiffs Don Hewitt, Advanced Technology Building Solutions, LLC (ATBS), and Tunica Hospitality & Entertainment, LLC (TH&E), affiliated entities designated as the intended developer and manager, reportedly invested millions of dollars in anticipation of acquiring the property through a conditional, multistep redevelopment structure that included an urban-renewal plan, public-improvement-district financing, a lease-option-management agreement, and an asset-purchase agreement that was repeatedly extended but ultimately expired.[1]

¶2. Plaintiffs never acquired title to the property, the option to purchase was never exercised, and a senior lienholder foreclosed. Plaintiffs subsequently sought reimbursement and asserted property-based claims against Defendants TJM and the County despite never holding title, a lien, or an enforceable purchase right. The chancery court dismissed the action with prejudice, concluding that Plaintiffs lacked a legally cognizable property interest, standing, or entitlement to relief. After careful review, we affirm the chancery court's judgment dismissing Plaintiffs' claims with prejudice.

## FACTS AND PROCEDURAL HISTORY

¶3. The property at issue in this appeal comprises a large tract of land in Tunica County formerly known as the Grand Casino Tunica or Harrah's Casino Tunica Resort. On January 15, 2016, TJM purchased the property from the bankruptcy estate of Caesars Entertainment

---

[1] Don Hewitt is the owner of ATBS and the manager of TH&E.

2

Operating Company. At the time of purchase, the property was encumbered by unpaid ad valorem taxes and special assessments. Because the 2015 special assessments remained unpaid, the Tunica County Tax Collector conducted a tax sale on August 29, 2016.

¶4. On August 10, 2017, the Tunica County Board of Supervisors (the Board) adopted a Resolution for the Finding of Necessity for the Urban-Renewal Plan and established the Southern Celebration Boulevard Urban-Renewal District, designating TH&E and/or its affiliate, ATBS, as the developer of the project. The urban-renewal plan included redeveloping and renovating the property into a County convention center complex, which would consist of two hotels, an RV park, a shooting range and hunting grounds, an administrative complex, a water park, an amphitheater, a golf course, a children's arcade, a lake, fishing piers, and ball fields. Under the urban-renewal plan, Tunica County would: (1) acquire the property from TJM for $12 million via a purchase-money mortgage; (2) convey the property to TH&E and ATBS for redevelopment once the County acquired the property and lease it back under a lease-purchase agreement pursuant to Mississippi Code Section 31-8-1 (Rev. 2020); and (3) issue urban-renewal bonds to finance the project.

¶5. On March 19, 2018, the Board passed a resolution authorizing participation in a redevelopment project for the property under Mississippi's Urban-Renewal Law. *See* Miss. Code Ann. §§ 43-35-1 through -37 (Rev. 2023). Following adoption of the urban-renewal plan, the County pursued bond financing under the urban-renewal law. On May 10, 2018, the Board, on behalf of the County, entered into an asset-purchase agreement with TJM, in which the County agreed to purchase the property from TJM for $12 million through a

3

purchase-money mortgage. Neither Hewitt, TH&E, nor ATBS was a party to this agreement.

¶6.     On May 17, 2018, TJM executed a special warranty deed transferring its Tunica County property to the County. In accordance with the asset-purchase agreement, the County executed and delivered a promissory note to TJM.  To secure the seller-financed portion of the purchase price, as well as the County's other obligations to TJM under the agreement, the County, as mortgagor, executed a purchase-money deed of trust and security agreement in favor of TJM, as mortgagee.  The special warranty deed and the purchase-money deed of trust and security agreement were both recorded on May 24, 2018, in the Office of the Chancery Clerk of Tunica County, Mississippi.

¶7.     Three months later, the County entered into an asset-purchase agreement with ATBS, under which the County agreed to sell the subject property to ATBS in exchange for specified purchase funds.  Tunica County intended to apply a portion of the sale proceeds toward satisfying the amounts it owed to TJM pursuant to the promissory note and deed of trust in favor of TJM.  The County granted ATBS (or its assigns) six extensions of the closing deadline under the asset-purchase agreement, with the final extension expiring on March 31, 2022.

¶8.     On or about March 19, 2019, the County entered into a lease, option to purchase, and management agreement with TH&E (the company) and ATBS (the manager) under Section 31-8-1.  The agreement authorized ATBS to manage redevelopment of the County's convention-center complex.  Additionally, the agreement stated that TH&E "owns or will own the [p]roperty and has secured [project financing] and intends to undertake the

4

development, construction, financing, equipping and overall establishment of the [p]roject." The agreement defined "Construction Costs" to include, among other things, development expenses, site design, permitting, and planning efforts necessary to complete the project. ATBS and TH&E reportedly incurred development and preconstruction costs totaling approximately $8,607,898.68 over several years.

¶9.	After the expiration of ATBS's sixth and final extension on March 31, 2022, the Board did not approve any further extension of the asset-purchase agreement with ATBS (or its assigns). As a result, the asset-purchase agreement expired on March 31, 2022, terminating any rights of ATBS to purchase the property from the County. On April 13, 2022, ATBS filed a construction lien under Mississippi Code Section 85-7-401 (Rev. 2021) against the subject property for $8,607,898.68 to secure repayment of its development expenses. The lien was filed nearly four years after TJM's purchase-money deed of trust was recorded.

¶10.	Because ATBS failed to remit the purchase funds to the County as required under their asset-purchase agreement, the County did not pay TJM the amounts it owed for the purchase of TJM's property. As a result, the County was in default under the promissory note and the deed of trust and security agreement in favor of TJM. Consequently, on April 20, 2022, TJM initiated foreclosure proceedings.

¶11.	On May 19, 2022, the morning of the scheduled foreclosure sale, Plaintiffs filed a temporary restraining order (TRO), preliminary injunction, and permanent injunction against foreclosure. The chancellor initially granted a TRO halting the sale but later dissolved it

after determining the complaint was not properly verified. The court further ordered Plaintiffs to reimburse TJM $200,000 for property costs, including upkeep, maintenance, and insurance, though this payment was never made. Plaintiffs failed to reimburse TJM.

¶12. The foreclosure sale was rescheduled for August 25, 2022. TJM, as mortgagee and holder of the mortgage, was the sole and highest bidder for the subject property, submitting a credit bid in the amount of $19,792,689 to offset and satisfy the County's monetary obligations to TJM under the promissory note and the purchase-money deed of trust and security agreement. As a result, the property was struck off to TJM, and all remaining amounts owed by the County to TJM were extinguished.

¶13. That same day, TH&E sought bankruptcy in the United States Bankruptcy Court for the Southern District of Mississippi. The Bankruptcy Court ultimately found that neither TH&E nor ATBS had performed physical construction or improvements on the property and dismissed the adversary complaint and bankruptcy case.

¶14. On October 10, 2022, Plaintiffs filed a Notice of Lis Pendens in Tunica County Chancery Court, again claiming they had a construction lien on the subject property under Section 85-7-401. Following a hearing on September 29, 2023, the chancery court entered an agreed order dismissing, vacating, and waiving all claims of liens against the subject real property and improvements. The order affirmed TJM's title and noted that Plaintiffs reserved a right to their claimed lien of $8,607,898.68, to be satisfied from potential surplus funds from the August 25, 2022 foreclosure sale. TJM reserved its defenses to Plaintiffs' claim of the lien satisfaction by excess foreclosure proceeds.

¶15. On September 13, 2024, the chancery court entered its final judgment, dismissing all claims with prejudice and awarding TJM $200,000 in damages against Plaintiffs jointly and severally. Plaintiffs filed a motion for reconsideration, which was denied.

## STANDARD OF REVIEW

¶16. When reviewing appeals from chancery court decisions, "we apply a limited standard of review in that the factual findings of the chancery court, if supported by substantial evidence, will not be disturbed unless the chancery court abused its discretion, applied an erroneous legal standard, or its findings are manifestly wrong or clearly erroneous." *Flowers v. Boolos (In re Est. of Smith)*, 204 So. 3d 291, 305 (Miss. 2016) (citing *Arrington v. Ready (In re Est. of Baumgardner)*, 82 So. 3d 592, 598 (Miss. 2012)). Questions of law, including questions of standing and the existence of legally cognizable claims, are reviewed de novo. *The Hotboxxx, LLC v. City of Gulfport*, 154 So. 3d 21, 24 (Miss. 2015); *see also Miss. High Sch. Activities Ass'n, Inc. v. R.T. ex rel. Trail*, 163 So. 3d 274, 277 (Miss. 2015).

## DISCUSSION

¶17. Plaintiffs' arguments can be consolidated into three issues: (1) whether Plaintiffs had a valid, enforceable lien on the subject property; (2) whether the chancery court erred by enforcing a previously agreed order requiring the Plaintiffs to pay TJM $200,000; and (3) whether the chancery court erred by finding that Plaintiffs lacked standing to challenge the transfer of funds between TJM and the County. We address each argument below.

1. **Whether Plaintiffs had a valid, enforceable lien on the subject property.**

¶18. First and foremost, we recognize that Plaintiffs lacked standing to challenge the

foreclosure or seek recovery. Standing requires a present ownership or lien interest. ***Miss. High Sch. Activities Ass'n, Inc.***, 163 So. 3d at 277. Plaintiffs were not parties to the promissory note or deed of trust and therefore lack ownership. As discussed below, they also lack a lien interest.

¶19. Plaintiffs filed their lien under Section 87-7-401 to secure payment in the amount of $8,607,898.68 for development and preconstruction services. These services included (1) engaging consultants and professionals; (2) paying development and preconstruction expenses; (3) creating an urban-renewal plan and an urban-renewal district; (4) work performed on rating-agency presentation; (5) property acquisition and preconstruction services; (6) litigation to secure release of property from tax sale; (7) securing tourism rebate and released legislative changes; (8) third-party expenses of operator, estimator, architects, engineers, and other service providers; (9) costs incurred to obtain feasibility and market studies, appraisals, environmental studies, and other third-party reports; (10) surveys and title reports; and (11) other project-related costs.

¶20. Mississippi Code Section 85-7-403, governing construction liens, allows for contractors to "have a special lien on the real estate or other property for which they furnish labor, services or materials[.]" Miss. Code Ann. § 85-7-403(1)(a) (Rev. 2021). Mississippi Code Section 85-7-403(5) provides: "Notwithstanding any other provision of this article, no lien shall exist in favor of any contractor or subcontractor who is not licensed as required by either Section 31-3-1 et seq., or Section 73-59-1 et seq., or who contracts with any contractor or subcontractor who is not licensed as required." Miss. Code Ann. § 85-7-403(5) (Rev.

8

2021).

¶21. Defendants argue that the chancellor correctly determined that Plaintiffs failed to establish a valid construction lien. Mississippi law requires proof that a lien claimant was properly licensed and furnished labor, services, or materials improving the property. *See* §§ 85-7-401, -403. The record reflects that Plaintiffs were not licensed contractors, did not perform construction, supplied no materials, and paid no subcontractors. Accordingly, we find that Plaintiffs have no valid, enforceable lien.

¶22. Plaintiffs argue that ATBS has held a commercial general contractor's license from the Mississippi State Board of Contractors since 2012 and that its license was in effect in 2017 when the County engaged it as project developer under the urban-renewal plan. Although there had been a lapse in registration, Plaintiffs claim that ATBS had its license reinstated after TJM's pleading. This document does not appear in the record.[2] In any event, Plaintiffs signed an agreed order on September 29, 2023, expressly waiving and releasing any and all claim of liens, damages, or otherwise against the subject property. Mississippi recognizes "that an agreed order or consent judgment 'acquires the incidents of and will be given the same force and effect as . . . judgments rendered after litigation. It is binding and conclusive, operating as res judicata and an estoppel to the same extent as judgments after contest.'" *In re Est. of Smith*, 204 So. 3d at 309 (quoting *Smith v. Malouf*, 826 So. 2d 1256, 1259 (Miss. 2002)).

---

[2] Plaintiffs fail to cite the record for ATBS's purported renewed licensure. *See* Miss. R. App. P. 28(a)(7) (stating that the appellant must cite the parts of the record relied on to support its argument).

9

¶23. Plaintiffs additionally rely on the lease, option to purchase, and management agreement signed by ATBS, TH&E, and the County to argue that they have a contractual right to place a lien on subject property. Plaintiffs correctly state that Section 4.5 of the lease-purchase agreement expressly granted Plaintiffs the right to place liens on the property:

> SECTION 4.5 Liens. The Company shall promptly pay or cause to be paid all sums of money that may become due for any labor, services, materials, supplies or equipment furnished or to be furnished to or for, in, upon or about the Project and which may be secured by any mechanic's, materialman's or other lien against the Project, or the interest of the Lessor therein, and shall cause each such lien to be fully discharged and released . . . .

But this agreement indicates that it would not become effective unless and until Plaintiffs purchased the property from Tunica County, which did not occur. Further, the asset-purchase agreement entered into between Plaintiffs and the County expired in March 2022, rendering the lease, option to purchase, and management agreement unenforceable.

¶24. Further, even if Plaintiffs could assert a junior lien interest, any such interest was extinguished by TJM's foreclosure. This Court has held that a properly conducted foreclosure by a senior lienholder terminates subordinate interests. *WBL Spo I, LLC v. W. Town Bank & Tr.*, 359 So. 3d 1069, 1074-75 (Miss. 2023). TJM's purchase-money deed of trust predated Plaintiffs' claims by four years, and TJM reacquired the property by credit bid at foreclosure. Miss. Code Ann. § 85-7-405(2)(b) (Rev. 2021).

¶25. For these reasons, we find that the chancery court did not err by dismissing Plaintiffs' claims with prejudice.

**2. Whether the chancery court erred by enforcing a previously agreed order requiring Plaintiffs to pay TJM $200,000.**

¶26. On May 31, 2022, the chancery court ordered Plaintiffs to pay TJM $200,000 for unpaid property-maintenance obligations. Plaintiffs never paid TJM but did ultimately agree to make the payment as part of the September 29, 2023 agreed order. Plaintiffs still did not make the payment to TJM. As a result, the chancellor in her final judgment held that TJM had the right to enroll the final judgment as a judgment lien against Plaintiffs, jointly and severally, in the amount of $200,000. We find that the chancellor properly enforced the $200,000 judgment for unpaid property-maintenance obligations. The records shows that Plaintiffs agreed to reimburse TJM Tunica but failed to do so, supporting entry of judgment and enforcement. *See **Est. of Van Ryan v. McMurtray**,* 505 So. 2d 1015 (Miss. 1987).

> **3.** **Whether the chancery court erred by finding that Plaintiffs lacked standing to challenge the transfer of funds between TJM and the County.**

¶27. Lastly, Plaintiffs argue that the amounts owed to TJM pursuant to the promissory note executed and delivered to it by Tunica County and the accompanying security agreements were incorrect and violated article 4, section 100, of the Mississippi Constitution.[3] Specifically, Plaintiffs claim that "the chancellor's failure to require TJM to credit the bond

---

[3] No obligation or liability of any person, association, or corporation held or owned by this state, or levee board, or any county, city, or town thereof, shall ever be remitted, released or postponed, or in any way diminished by the Legislature, nor shall such liability or obligation be extinguished except by payment thereof into the proper treasury; nor shall such liability or obligation be exchanged or transferred except upon payment of its face value; but this shall not be construed to prevent the Legislature from providing by general law for the compromise of doubtful claims.

Miss. Const. art. 4, § 100.

11

proceeds and subsequent debt service payments against the promissory note violated Section 100 of the Mississippi Constitution of 1890 and resulted in an improper transfer of public funds to a private entity." The chancery court found that Plaintiffs lacked standing to raise this issue because Plaintiffs were not parties to either of these instruments. We agree.

¶28. The United States Supreme Court has expressly held that a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 955, 104 S. Ct. 2839, 81 L. Ed. 2d 786 (1984) (internal quotation mark omitted) (quoting *Warth v. Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197, 2205, 45 L. Ed. 2d 343 (1975) (citing *Tileston v. Ullman*, 318 U.S. 44, 63 S. Ct. 493, 87 L. Ed. 603 (1943))). Section 100 is a limitation on governmental power, not a source of private rights, and it does not create a cause of action or confer compensable property interests on third parties. Moreover, whether a county acted within constitutional limits does not cure a private litigant's lack of standing, nor does it transform expired contractual expectations or voluntary expenditures into vested property rights. Even if section 100 were implicated, which the record does not establish, the remedy would be prospective and public in nature, not an award of damages or reimbursement to Plaintiffs. Accordingly, Plaintiffs' section 100 argument cannot create standing, revive extinguished interests, or justify reversal of the chancery court's judgment.

**CONCLUSION**

¶29. In sum, the chancery court did not err by dismissing Plaintiffs' claims with prejudice. Nor did the chancery court err by enforcing the agreed order requiring Plaintiffs to pay TJM

12

$200,000.  Finally, we find that Plaintiffs lack standing to bring any claim regarding the transfer of funds between TJM and the County.  Accordingly, we affirm the chancery court's judgment.

¶30.   **AFFIRMED.**

**RANDOLPH, C.J., KING AND COLEMAN, P.JJ., GRIFFIS, SULLIVAN AND BRANNING, JJ., CONCUR.**